# In the United States Court of Federal Claims

No. 07-124 C

(Filed May 16, 2007)

| | |
|---|---|
| * * * * * * * * * * * * * * | * |
| | * |
| DANIEL D. INGHAM, | * |
| | * |
| *Plaintiff,* | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| *Defendant.* | * |
| * * * * * * * * * * * * * * | * |

## ORDER

This matter is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction. Defendant's motion has been briefed, and oral argument was not requested by the parties. This order presents an analysis of the accrual of plaintiff's claims, requests briefing on two questions of law and defers a ruling on defendant's motion to dismiss.

## BACKGROUND[1]

Plaintiff is currently a lieutenant colonel in the United States Army Reserves (Reserves). Compl. ¶ 2. Plaintiff filed suit in this court on February 22, 2007 complaining that his resignation from the United States Army (Army) on April 21, 1986 was involuntary. Pl.'s Opp. at 6. Plaintiff seeks back pay and allowances related to allegedly delayed promotion(s) in the Reserves, correction of his military

---

[1]/ The facts recited here are taken from plaintiff's pleadings and are not disputed by defendant for the purposes of resolving its motion to dismiss for lack of jurisdiction. The court makes no finding of facts in this order.

records and the convening of selection boards to decide if he would have earlier received the rank of lieutenant colonel in the Reserves. Compl. ¶ 18. Defendant asserts a statute of limitations defense, noting that twenty years have elapsed since plaintiff's allegedly involuntary resignation from the Army. Def.'s Mot. at 1.

The full record of plaintiff's military service is not before the court.[2] Nonetheless, certain pertinent facts are alleged by plaintiff. The court recounts the most significant of those alleged facts here.

While serving as a first lieutenant on active duty in the Army in the mid-1980s, plaintiff received inaccurate advice from a personnel officer which led him to presume that his recent selection for promotion to captain, although not yet made reality by an actual promotion, would carry over with him if he resigned from the Army and went into the Reserves. Compl. ¶¶ 4-10. Plaintiff followed this advice, resigned from active duty in the Army on April 21, 1986, and immediately entered the Reserves. *Id.* ¶ 11. Plaintiff was eventually disabused of his misunderstanding that his selection for promotion and his anticipated promotion date would automatically be adopted by the Reserves; rather than achieving the rank of captain in the Reserves in 1987, as he had expected, he was not promoted to captain until 1989. *Id.* ¶ 12-13.

Plaintiff first took action to protest his 1986 allegedly involuntary resignation from the Army on August 23, 2000, when he began a series of requests for corrective action before the Army Board for Correction of Military Records (Board). Compl. ¶ 14-15. Plaintiff's efforts continued through the year 2005, but these requests for changes in his promotion dates were rejected by the Board. *Id.* ¶ 16. Plaintiff now seeks a judgment which would provide the relief he was refused by the Board.

Plaintiff describes three significant transitions out of and into active duty status. First, when he resigned from the Army in 1986, he left active duty. Compl. ¶ 11, Pl.'s Opp. at 2. Next, after having been in the Reserves for a couple of years, he went into the Active-Guard Reserve (AGR) program in 1988, which offered "an

---

[2]/ Plaintiff attached three copies of documents alleged to be plaintiff's discharge documents, one of which is partially illegible, to his opposition brief. Pl.'s Opp. Exs. 1-3. The facts alleged in those documents are undisputed by defendant for the purposes of resolving the instant motion. *See* Def.'s Reply at 1 n.2.

active duty career." Pl.'s Opp. at 2. Over the course of the next fifteen years, plaintiff remained in the AGR program, on active duty. Compl. ¶ 13, Pl.'s Opp. at 3. Plaintiff retired from active duty in the Reserves on February 1, 2005.[3] Pl.'s Opp. at 3.

## ANALYSIS

There is no dispute that this court's relevant statute of limitations, found at 28 U.S.C. § 2501 (2000), bars suits filed more than six years after a cause of action has accrued. "A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (*en banc*) (citations omittted). This accrual date, in military discharge cases, is generally the same date as the service member's discharge from active duty. *See id.* at 1310 (holding that a military back pay plaintiff's "cause of action for recovery of the monetary losses he suffered as a result of his discharge from active duty, and for the ancillary equitable relief that he sought in his complaint, accrued on the date of the discharge"). The court must decide whether this general rule, that the accrual of a military back pay claim occurs on the date of discharge from active duty, applies here, and, if so, whether it is plaintiff's discharge from active duty on April 21, 1986, or his discharge from active duty on January 31, 2005, that is the accrual date for plaintiff's claims in the subject matter.

Plaintiff cites *Martinez* for "[t]he general rule . . . that a plaintiff's [military pay] claim accrues on the date of actual discharge from service." Pl.'s Opp. at 1. Although plaintiff's term "actual discharge from service" is nowhere defined, it is clear that plaintiff prefers a reading of *Martinez* which emphasizes the automatic designation of a discharge date as the accrual date for military back pay claims, rather than reading *Martinez* to require an analysis of when an alleged deprivation

---

[3]/ The court notes that plaintiff is described in the pleadings as both a "current[]" member of and a "retired from active duty" member of the Reserves. *Compare* Compl. ¶ 2 *and* Pl.'s Opp. at 3. Now that he is no longer on active duty, plaintiff's current status with respect to the Reserves, whatever that might be, is immaterial to the motion at issue here. If the court reads plaintiff's exhibit correctly, the precise date of discharge from active duty in the Reserves was January 31, 2005. Pl.'s Opp. Ex. 3.

of military pay occurred. *Id.* at 5 (disagreeing with defendant's reading of *Martinez* which, according to plaintiff, harbors the mistaken "notion that in military pay cases the date of accrual is the date on which the plaintiff was denied the pay to which he claims entitlement"). Defendant argues just the opposite. Defendant contends that although a discharge date may coincide with the date of an alleged injury, *i.e.*, the pertinent deprivation of military pay, the focus of *Martinez* was on the date of the injury, not on the date of a discharge from the military. Def.'s Reply at 3.

*Martinez* provides an analysis of claim accrual in military back pay cases, but targets an issue not before this court – whether such a claim accrues upon discharge or after a plaintiff has exhausted permissive administrative review procedures before a board which has the power to correct military records. 333 F.3d at 1301. The United States Court of Appeals for the Federal Circuit reviewed Mr. Martinez's case *en banc* to decide whether or not to follow precedent commanding "that his cause of action accrued as of the date of his discharge from active duty and that the running of the limitations period was not tolled by his application to the Correction Board." *Id.* The Federal Circuit reaffirmed that precedent and ruled that Mr. Martinez's claims accrued upon his discharge from active duty. *Id.* at 1310, 1314. Unfortunately, *Martinez* does not directly speak to the issue of whether claim accrual might, in different circumstances, occur at a time either before or after a discharge from active duty. A close analysis of *Martinez* does yield some guidance, however, as to how this court should determine an accrual date for a military back pay claim.

Mr. Martinez was litigating two monetary claims before the United States Court of Federal Claims. The first claim was for two months of forfeited pay, taken from him as a result of a disciplinary proceeding concluding on August 9, 1991, while he was on active duty. *Martinez*, 333 F.3d at 1300. The second monetary claim was for pay he did not receive once he was separated from active duty on February 25, 1992, as a further result of the disciplinary proceeding. *Id.* at 1299. This court found that Mr. Martinez's two sets of claims accrued on different dates: his forfeited pay claim accrued on August 9, 1991, six months before his discharge from active duty; and, his back pay claim and associated equitable claims accrued on February 25, 1992, his date of discharge from active duty. *Id.* at 1300-01. Because Mr. Martinez did not file suit until August 17, 1998, the trial court found that both sets of claims, the forfeited pay claim accruing on August 9, 1991, and the back pay claim and equitable claims accruing on February 25, 1992, were

time-barred because they were filed more than six years after those claims accrued. *Id.* at 1300. Mr. Martinez's complaint was dismissed for lack of jurisdiction. *Id.*

The Federal Circuit affirmed the decision of the Court of Federal Claims. *Id.* at 1299. The *en banc* court extensively discussed the second accrual date, February 25, 1992, the accrual date for claims based on the military pay which Mr. Martinez no longer received after his discharge from active duty. *See id.* at 1300-01, 1310-11, 1314. Unfortunately, the *Martinez* opinion mentions the other accrual date of August 9, 1991 only in passing, *id.* at 1300-01, and never comments on the trial court's analysis regarding the accrual date of the less valuable claim.

Thus, *Martinez* affirmed, but did not discuss, this court's determination that a military pay claim could accrue on a date other than on the date of discharge. Because the primary focus of the *Martinez* opinion is on the second set of claims, that where the injury coincided with the discharge date, it is wrong to assume that the sweeping language of the opinion discussing the second set of claims also applies to the first claim, the forfeited pay claim which accrued six months before Mr. Martinez's discharge from active duty. For example, the pronouncement that "[i]n a military discharge case, [the Federal Circuit] and the Court of Claims have long held that the plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge" simply means that when a discharge from active duty deprives the plaintiff of the pay for which he sues in this court, the accrual date is that of the military discharge. *Martinez*, 333 F.3d at 1303.

To read *Martinez* differently is to ignore clear statements in that opinion which define an accrual date as the moment when an alleged injury has occurred, which in military pay cases typically is the moment when the United States no longer pays the plaintiff what is allegedly commanded by statute. *See id.* at 1303 (describing an accrual date as the moment when all events have occurred to fix the government's alleged liability), 1314 (stating that "we have consistently held that the limitations period is established by the date of accrual, which is the date on which the service member was denied the pay to which he claims entitlement"). The Federal Circuit did not explicitly endorse the trial court's application of this principle in determining that August 9, 1991 marked the accrual of Mr. Martinez's forfeited pay claim. It is noteworthy, however, that the trial court's determination of the accrual date for the forfeited pay claim was affirmed *sub silentio* by the Federal Circuit, and that the appellate court was careful to describe its holding concerning the second accrual date as pertaining to "Mr. Martinez's cause of action

for recovery of the monetary losses he suffered *as a result of his discharge from active duty*, and for the ancillary [equitable] relief that he sought in his complaint." *Id.* at 1310 (emphasis added). The forfeited pay was clearly not part of the losses suffered by Mr. Martinez as a result of his discharge from active duty – the forfeited pay claim arose six months earlier. Nothing in the Federal Circuit's opinion suggests that the forfeited pay claim accrued at the time of Mr. Martinez's discharge from active duty.

Therefore, the court agrees with defendant that *Martinez* stands for the rule that military pay claims accrue when the government has denied the plaintiff pay to which he claims entitlement, and that the accrual date is often but not necessarily the date of discharge from active duty.[4] This interpretation is in accord with a line of cases from the Court of Claims discussing the accrual of military pay claims. To cite one example, a suit filed in 1952 was time-barred because it was brought more than six years after the plaintiff, alleging a pre-enlistment promise by the Army, was denied the pay of a higher rank throughout his military service, starting with the time of his enlistment in 1943. *Goldstein v. United States*, 130 F. Supp. 330, 332 (Ct. Cl. 1955). Mr. Goldstein was discharged in 1945. *Id.* The Court of Claims commented:

> Moreover, any right which plaintiff might assert in this court under any agreement made with the Army at the time of his enlistment in August 1943, is barred by the six-year statute of limitations applicable to suits in this court. 28 U.S.C. § 2501. The petition was filed on September 26, 1952, which is more than six years after his separation from the service on July 9, 1945. This is the *latest date* that could possibly be selected for the accrual of this type of cause of action.

*Id.* (emphasis added).

In another case of that era, the Court of Claims discussed the pay claims of

---

[4]/ In *Kosmo v. United States*, 72 Fed. Cl. 46, 54 (2006), this court reached the same conclusion. The only significant difference between the discussion in that case and the analysis here is that different weight is accorded to the Federal Circuit's recitation of findings by the lower court.

an officer confined because of a court martial sentence but who nonetheless had a right to monthly pay and allowances from the Army:

> Plaintiff had a right to sue and his claim first accrued when the pay became due. We look upon [the Army's payment procedures as governing how pay was to be issued] but not as altering in any respect the right itself, which for the purpose of the statute of limitation becomes fixed at the close of the first month [of confinement], for which the person concerned is not paid. Plaintiff's cause of action accrued *at the very latest* on February 13, 1945, when the sentence of the court martial was confirmed, said date being his last day of service in so far as the pay and allowances here in question are concerned. From that day he was out of the service [and not entitled to further pay].

*Mistretta v. United States*, 120 F.Supp. 264, 266-67 (Ct. Cl. 1954) (emphasis added). Mr. Mistretta's suit was time-barred because he filed suit more than six years after the last possible accrual date of his pay claims, the moment when his right to payment expired at the time of his separation from the service. *Id.* at 267. This case, too, shows that accrual of military pay claims is determined more by the deprivation of pay than by the discharge date. *See id.* at 266; *see also Curry v. United States*, 52 Fed. Cl. 799, 801 (2002) ("In the case of pay claims, our predecessor court held that a pay claim accrues when the government first fails to make a salary payment.") (citing *Middleman v. United States*, 91 Ct. Cl. 306, 308 (1940))).

The foregoing rather lengthy discussion of precedent would not normally be needed in a military discharge case. But here, plaintiff was discharged from active duty not once but twice, and plaintiff argues that the second discharge date, in 2005, is the correct accrual date for plaintiff's pay claims and requests for equitable relief. Pl.'s Opp. at 1. Defendant argues, instead, that "plaintiff's claim accrued sometime between April 21, 1986 – when he was discharged from active duty – and March 1, 1987, the date upon which he originally was scheduled to be promoted, but was not." Def.'s Reply at 2. Because it is the complained-of deprivation of pay which triggers the accrual of plaintiff's claims, the court finds that plaintiff's pay and equitable relief claims accrued sometime between his

discharge in 1986, when it is undisputed that he was receiving all pay due his rank, and sometime in the late 1980s when he claims he should have been receiving the pay commensurate with the rank of captain, but was only receiving the pay of a first lieutenant. An estimated date for the allegedly forgone promotion, adopted by both parties for the purposes of this motion, is March 1, 1987. *See* Compl. ¶ 12; Pl.'s Opp. at 2 (stating that "the actual date of his promotion would have been March 1, 1987"); Def.'s Reply at 2. In any event, the date could have been no later than April 21, 1989, when plaintiff was promoted to captain in the Reserves. Compl. ¶ 13.

## CONCLUSION

In this case, plaintiff's military pay claims and requests for equitable relief accrued sometime between April 21, 1986 and April 21, 1989. Plaintiff filed suit here on February 2, 2007, more than seventeen years later. This court's statute of limitations allows six years after the accrual of a claim for the filing of a suit. 28 U.S.C. § 2501. From the briefs, the court can discern no reason why plaintiff's claims are not time-barred.

The court, however, in the interests of fundamental justice, must raise an issue *sua sponte*. *See Ricard v. Birch*, 529 F.2d 214, 216 (4th Cir. 1975) (noting that 50 U.S.C. app. § 526 (2003 Supp. III) (then codified at § 525) is mandatory in application and that "fundamental justice" required consideration of that tolling provision, even if not argued by the parties below); *see also Laughary v. United States*, 228 Ct. Cl. 739, 743 (1981) (commenting that *sua sponte* "objections raised by the trial judge are serious and deserving of consideration," and ordering a remand "in light of the objections raised by the trial judge"). The parties must address the following two questions, among other arguments that they wish to pursue:

(1) Would the statute which tolls the running of this court's six year limitations period for a plaintiff serving his country on active duty in the military apply to these facts? 50 U.S.C. app. § 526 (2003 Supp. III) (formerly codified at 50 U.S.C. app. § 525); *see, e.g.*, *Bowen v. United States*, 292 F.3d 1383, 1386 (Fed. Cir. 2002); *Bickford v. United States*, 656 F.2d 636, 639 (Ct. Cl. 1981); *Deering v. United States*, 620 F.2d 242, 244 (Ct. Cl. 1980); *Mai v. United States*, 22 Cl. Ct. 664, 668-69 & n.3 (1991), *aff'd in relevant part*, 975 F.2d 868

(Table) (Fed. Cir. 1992); *Stephan v. United States*, 490 F. Supp. 323, 325 (W.D. Mich. 1980).

(2) Would the doctrine of laches, notwithstanding any tolling provided by 50 U.S.C. app. § 526, bar plaintiff's claims in this case? *See Cornetta*, 851 F.2d 1372, 1378 (Fed. Cir. 1988); *Deering*, 620 F.2d at 245.

Accordingly, it is hereby **ORDERED** that the parties shall **CONFER** and subsequently **FILE** a **Joint Status Report**, on or before **May 31, 2007**, proposing either a sequential sur-reply schedule to respond to the above-mentioned questions, or an alternative motion schedule that would more efficiently resolve the issues presently before the court. The court **DEFERS** its ruling on defendant's motion until the parties have responded to the court's inquiry.

/s/Lynn J. Bush
LYNN J. BUSH
Judge