**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| DANIEL D. INGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07-124C |
| | ) | (Judge Lynn J. Bush) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS AND, IN THE ALTERNATIVE, FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to this Court's Orders (dated May 16 and May 30, 2007), and Rule 8(c) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the complaint in the above-captioned matter be dismissed because it is barred by the doctrine of laches. Plaintiff's complaint also should be dismissed, pursuant to RCFC 12(b)(1) or 12(b)(6), because plaintiff's claim involves nonjusticiable military personnel decisions.

In the alternative, pursuant to RCFC 52.1, the United States respectfully requests that the Court enter judgment upon the administrative record in favor of the United States. Plaintiff's claim fails because the administrative record demonstrates that plaintiff was voluntarily discharged from the Army. Moreover, this Court should grant judgment to the United States upon the administrative record because the decision of the Army Board for Correction of Military Records ("ABCMR"),[1] denying plaintiff's request for relief, was not arbitrary and capricious, an abuse of discretion, or otherwise contrary to law.

[1] The ABCMR is composed of civilians appointed by the Secretary of the Army, and has statutory authority to "correct any [Army] record" in order to "remove error or injustice." 10 U.S.C. § 1552(a) (2005).

## STATEMENT OF THE ISSUES

1. Whether plaintiff's claims are barred by the doctrine of laches.

2. Whether plaintiff's claims should be dismissed because they involve nonjusticiable issues regarding military promotions.

3. Whether the United States is entitled to judgment on the administrative record because plaintiff was discharged voluntarily from active duty.

4. Whether the Untied States is entitled to judgment on the administrative record because the decision of the ABCMR was not arbitrary, capricious, or otherwise contrary to law.

## STATEMENT OF FACTS[2]

Plaintiff Daniel D. Ingham, currently a lieutenant colonel ("LTC") in the United States Army Reserve ("USAR"), filed his complaint in this Court on February 22, 2007 seeking two retroactive promotions and a corresponding judgment for back pay and allowances. See Compl. at ¶ 18.[3] LTC Ingham alleges that he was selected for promotion to captain on or about November 26, 1985, while he was on active duty. See Compl. at ¶¶ 4-5. Plaintiff acknowledges that the "actual anticipated date of promotion to captain was unknown." Id. at ¶ 5. Plaintiff claims an officer in the Adjutant General's ("AG") Branch[4] misinformed plaintiff that his transfer from the active Army to the USAR would not effect either his selection for promotion to captain or the associated date of rank change. Plaintiff further alleges that, based on that

---

[2] In accordance with RCFC 52.1(b), the United States also has filed a separate statement of facts upon which defendant bases its motion for judgment on the administrative record.

[3] "AR" refers to the administrative record. "Compl." refers to plaintiff's complaint.

[4] An AG officer is responsible for personnel and administrative functions. The responsibilities and training requirements for an AG officer are outlined on the Army's Reserve Officer Training Corps website, found at http://www.goarmy.com/RotcViewJob.do?id=304.

misinformation, he separated from active duty on April 21, 1986, and entered the USAR. Id. at ¶¶ 6-11.

LTC Ingham contends that he relied on advice from then Captain ("CPT") Martin J. Patterson, AG Branch, regarding whether plaintiff's selection for promotion to captain would transfer to the USAR, were plaintiff to leave active duty before his promotion was finalized. Compl. at 2, ¶ 6. Relying on CPT Patterson's position in the AG Branch, LTC Ingham argues that CPT Patterson had a duty to be a "subject matter expert" in the transfer of an active duty promotion to the USAR. Id. at ¶¶ 6-7. In that regard, LTC Ingham claims that he asked CPT Patterson "whether [plaintiff's] selection for promotion to captain" would transfer to the USAR should plaintiff leave active duty prior to his actual promotion. Id. at ¶ 6. Plaintiff alleges CPT Patterson opined that the "selection for promotion to captain and date of rank associated therewith would be unchanged and convey to the reserves." Id. ¶ 9. Plaintiff claims that he relied on CPT Patterson's advice and "separated from the active Army on April 21, 1986, and immediately entered the Army Reserve. . . . This was done on the good faith assumption that his promotion to captain would occur in the reserves on the same date as it would have while on active duty." Id. at 2-3, ¶¶ 10-11.

After transferring to the reserves, LTC Ingham learned that his active duty selection for promotion to captain was "null and void and that he would have to wait for a reserve promotion to captain." Id. at ¶ 12. While in the USAR, plaintiff ultimately was promoted to captain on April 21, 1989, to major on April 20, 1996, and to lieutenant colonel on April 19, 2003. Id. at ¶ 13. Despite LTC Ingham's acknowledgment that he had received putatively bad advice in 1986 or 1987, plaintiff waited approximately thirteen years, until August 23, 2000, to seek relief

from the ABCMR. Id. at ¶ 14. The ABCMR denied LTC Ingham's request for relief on April 25, 2001, in addition to three subsequent pro se reconsideration requests, the last of which was on April 24, 2003. Id. at ¶ 14. LTC Ingham, via counsel, submitted yet another reconsideration request to the ABCMR, almost two and a half years later, on October 10, 2005. Id. at ¶ 15.

LTC Ingham initiated the instant suit in this Court on February 22, 2007, almost sixteen months after his last ABCMR filing and approximately twenty years after he first learned his selection for promotion as an active duty did not transfer to the USAR.

## SUMMARY OF ARGUMENT

The equitable doctrine of laches bars plaintiff's claims. Over twenty years have passed since plaintiff allegedly was given advice that caused his discharge. Such delay is inexcusable and has resulted in prejudice to the United States. Moreover, both of plaintiff's requests – that his promotion dates to captain and major be modified retroactively and that a Special Selection Board ("SSB") consider his case – involve nonjusticiable military personnel decisions.

Finally, if the Court does not dismiss plaintiff's Complaint, the administrative record demonstrates both that LTC Ingham's discharge from the active duty Army was voluntary and that the ABCMR's decision denying plaintiff's claim for reinstatement and back pay was not arbitrary, capricious, or otherwise contrary to law. Indeed, The ABCMR conducted a detailed review of all of plaintiff's records, and reasonably concluded that there was no basis for determining that he was involuntarily separated from the active Army in 1986. Accordingly, this Court should grant judgment upon the administrative record in favor of the United States.

## ARGUMENT

### I. Plaintiff's Claims Are Barred By The Doctrine Of Laches

LTC Ingham's claims are barred by laches because his delay in bringing suit against the United States was both unreasonable and inexcusable, and would result in severe prejudice to the defendant if permitted to proceed. Cornetta v. United States, 851 F.2d 1372, 1378-80 (Fed. Cir. 1988) ("If the government invokes the affirmative defense of laches, it has the burden to show that it was prejudiced by a claimant's tardiness in filing suit."). We note that this Court "ha[s] traditionally applied the equitable doctrine of laches to promote the vigilant pursuit of those claims ripe for adjudication and, in turn, by barring the claims of those who slumber on their rights." Mai v. United States, 22 Cl. Ct. 664, 669 (1991) (citations and internal quotations omitted). Indeed, where, as here, a plaintiff has notice of a cause of action, laches may bar his claim, notwithstanding that the statute of limitations has yet to run. Murphy v. United States, 16 Cl. Ct. 385 (1989).[5]

LTC Ingham's claims accrued at the time of his complained-of deprivation of pay, which allegedly occurred sometime between his active Army discharge, on April 21, 1986, and April 21, 1989, when he was promoted to captain in the USAR. Compl. ¶ 13. Accordingly, at least seventeen years and ten months elapsed between the accrual of LTC Ingham's claim and the filing of his complaint in this Court. Although LTC Ingham may argue that he was unaware of

[5] In particular, the doctrine of laches bars LTC Ingham's claims, notwithstanding the tolling of this Court's six year statute under the Servicemembers Civil Relief Act, 50 U.S.C. app. § 526. See Cornetta, 851 F.2d at 1378 (citing Deering v. United States, 620 F.2d 242, 245 (Ct. Cl. 1980)). In addition, "'the longer the delay by a plaintiff in filing suit, . . . the greater the shift to plaintiff of demonstrating lack of prejudice.'" Yerxa v. United States, 11 Cl. Ct. 110, 122 (1986) (quoting Pepper v. United States, 794 F.2d 1571, 1574-75 (Fed.Cir.1986)).

his rights until he filed his first ABCMR request, see AR 92, his lengthy delay in filing suit in this Court constitutes an unreasonable and inexcusable delay. See Pepper v. United States, 794 F.2d 1571 (Fed. Cir. 1986) (finding inexcusable delay).

While military personnel can be precluded, due to the nature of their military duties, from attending court proceedings, LTC Ingham's status in the USAR did not excuse him per se from seeking relief. See Deering, 620 F.2d at 245. In this case, for example, LTC Ingham's assignment history indicates that following his last regular Army assignment from Germany, and upon leaving for the USAR in 1986, all of his assignments were located within the United States. AR 106.

The United States has suffered substantial economic and operational prejudice as a result of plaintiff's failure to seek relief in a timely fashion. 851 F.2d at 1379 (noting that inability to mount a proper defense can constitute prejudice). For example, conflicting evidence contained within LTC Ingham's military record is evidence that plaintiff's recollection of events has been diminished by the passage of time. In fact, the letter from Mr. Patterson, upon which LTC Ingham relied before the ABCMR, reveals that Mr. Patterson himself is not sure about what counsel he provided, nor what regulations he referenced, in allegedly giving wrongful advice to LTC Ingham. AR 67. If the Court were to require additional witnesses and evidence to resolve LTC Ingham's claims, such witnesses would be difficult to locate and, even if located, their memories of events and facts unquestionably will have faded after approximately twenty years since Mr. Patterson allegedly offered LTC Ingham erroneous advice.

Moreover, LTC Ingham essentially requests that this Court "unscramble the egg" by seeking to have both this Court and the Army unreasonably speculate as to how LTC Ingham's

career might have progressed had he chosen to remain with the active Army. LTC Ingham, however, could have prevented such unnecessary speculation – and the attendant, artificially inflated damages claim caused by his delay – had he simply filed suit in a timely manner. Accordingly, this Court should hold plaintiff's claims barred by the doctrine of laches. See, e.g., Cadigan v. Marsh, 693 F.2d 234 (1st Cir. 1982) (action by former soldier seeking reinstatement to active duty was barred by laches where over eighteen years had elapsed before he sued in district court, he did not petition the ABCMR until eleven-years after his discharge, and his pursuit of administrative remedies did not preclude him from filing suit earlier).

## II. LTC Ingham's Complaint Is Nonjusticiable And Thus Should Be Dismissed

### A. Standard of Review

In deciding a RCFC 12(b)(1) motion, "determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (citations omitted). Thus, where this Court's subject matter jurisdiction is placed in issue, the non-moving party bears the burden of establishing jurisdiction. J&E Salvage Co. v. United States, 37 Fed. Cl. 256, 260 (1997), aff'd, 152 F.3d 945 (Fed. Cir. 1998) (table).

It is well settled that this Court is one of limited jurisdiction. Bath Iron Works Corp. v. United States, 27 Fed. Cl. 114, 122 (1992), aff'd, 20 F.3d 1567 (Fed. Cir. 1994). Its authority to grant relief against the United States is limited by the extent to which the United States has waived sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976). "[T]he United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its

consent to be sued in any court define that court's jurisdiction to entertain the suit.'" Id. at 399 (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)). The waiver of "sovereign immunity 'cannot be implied but must be unequivocally expressed.'" 424 U.S. at 399 (quoting United States v. King, 395 U.S. 1, 4 (1969)).

In order for this Court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. See 28 U.S.C. § 1491. In this case, LTC Ingham invokes the Military Pay Act, 37 U.S.C. § 204, as the relevant money-mandating statute. Compl. at 1.

However, a review of LTC Ingham's complaint demonstrates that his claims are nonjusticiable, and thus should be dismissed pursuant to RCFC 12(b)(1). See S.K.J. & Assoc., Inc. v. United States, 67 Fed. Cl. 218, 229 (2005) (Bush, J.) (citing CW Government Travel, Inc. v. United States, 46 Fed. Cl. 554, 557 (2000), for the proposition "that justiciability of a case . . . is a question of subject matter jurisdiction"); but see Edison Torres v. United States, 650 F.2d 290 n.1 (Ct. Cl. 1980) (unpublished) (concurring with Fifth Circuit that "a dismissal predicated on the justiciability of a claim against the Army is a dismissal under Rule 12(b)(6)").

**B. This Court Can Interfere In Military Promotion Decisions Only in Limited Circumstances Not Present Here**

The Supreme Court has instructed that courts generally should be reluctant to interfere with the internal affairs of the military because it is a specialized society that "must insist upon a respect for duty and discipline without counterpart in civilian life." Schlesinger v. Councilman, 420 U.S. 738, 757 (1975). That rationale applies with equal force to a case where one seeks, as LTC Ingham does here, judicial interference with military personnel decisions. See Chappell v. Wallace, 462 U.S. 296, 300 (1983).

In this case, LTC Ingham seeks back pay – beginning from the day after his release from active duty – for the putative delay in his promotion to captain allegedly caused by Mr. Patterson's advice. Compl. at 4, ¶ 18. LTC Ingham, however, fails to allege that he would have been promoted on April 22, 1986, absent the alleged misrepresentation. Additionally, LTC Ingham's complaint would have the Court award him an earlier promotion date not only to captain, but also to major, in the USAR. Compl. at 4-5, ¶ 18. Although LTC Ingham alleges that he is currently a lieutenant colonel in the USAR, see Compl. at 1, ¶ 2, he requests the Court to order the Army to convene a special selection board ("SSB") to determine when his selection for promotion to lieutenant colonel would have been, had he been promoted to major on April 22, 1993. Id. at 5, ¶ 18(e). LTC Ingham does not explain why such a procedure would be appropriate to determine his promotion date for lieutenant colonel, but not for the rank of major. In any event, LTC Ingham asks that this Court to interject itself into the USAR's selection and promotion process, including the timing of such decisions.

The decision whether to promote an officer in the Armed Services,[6] as well as the method and timing of those decisions, implicate highly discretionary questions of military judgment and expertise that civilian courts ordinarily may not second guess. See Murphy v. United States, 993 F.2d 871, 872-74 (Fed. Cir. 1993); Sargisson v. United States, 913 F.2d 918, 921-22 (Fed. Cir. 1990); Voge v. United States, 844 F.2d 776, 780 (Fed. Cir. 1988) ("This is like thousands of other routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with."); Kreis v.

[6] It is well established that there is no right to a promotion. Doggett v. United States, 207 Ct. Cl. 478 (1975).

Secretary of the Air Force, 866 F.2d 1508, 1511-12 (D.C. Cir. 1989); Strickland v. United States, 36 Fed. Cl. 651, 655 (1996); Bunch v. United States, 33 Fed. Cl. 337, 340 (1995); Longhofer v. United States, 29 Fed. Cl. 595, 604 (1993).

Thus, the Federal Circuit consistently has held that judicial review is appropriate when there are sufficiently precise "tests and standards" that courts can administer to determine whether the military's actions were correct. Murphy, 993 F.2d at 873; see also Sargisson, 913 F.2d at 922; Voge, 844 F.2d at 780. If there are no such tests or standards to apply in a given case, the Court must abstain from deciding the matter. Murphy, 993 F.2d at 873. While a plaintiff may ask a court to review whether the military adhered to applicable statutory or regulatory procedures in reaching a military decision, the merits of a military promotion decisions are nonjusticiable. Barnes v. United States, 473 F.3d 1356, 1361 (Fed. Cir. 2007) (holding that the Navy complied with all relevant statutory and regulatory procedures in a challenge to a correction board decision regarding promotion).

LTC Ingham's generalized complaint does not satisfy the test for review set forth in Murphy. Indeed, LTC Ingham declined to identify even a single statutory or regulatory procedure that the defendant failed to follow when it determined LTC Ingham's promotion dates. Because LTC Ingham failed to plead any specific procedures that were not followed, his claims are nonjusticiable, and they should be dismissed. Barnes, 473 F.3d at 1361.

## III. In the Alternative, This Court Should Grant the Government's Motion for Judgment on the Administrative Record

Because LTC Ingham's separation from the active Army, and his attendant transfer to the USAR, was voluntary, LTC Ingham's claims necessarily fail. Moreover, because the ABCMR's decision in LTC Ingham's case was reasonable – and not arbitrary, capricious, or otherwise

contrary law – the United States is entitled to judgment on the administrative record.

**A. This Court's Review of ABCMR Decisions Is Limited**

RCFC 52.1 provides for a motion for judgment on the administrative record, which conceptually is distinct from a motion for summary judgment. Bannum, Inc. v. United States, 404 F.3d 1346, 1355 (Fed. Cir. 2005); see also Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1372 (Fed. Cir. 2006). In reviewing a motion for judgment on the administrative record, this Court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record. A&D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006). The existence of a question of fact neither precludes the granting of a motion for judgment, nor requires this Court to conduct an evidentiary proceeding. See Saab Cars, 434 F.3d at 1372; Fort Carson Support Servs. v. United States, 71 Fed. Cl. 571, 585 (2006). Instead, questions of fact must be resolved by reference to the administrative record, "as if [this Court] were conducting a trial on [that] record." Bannum, 404 F.3d at 1357; see also Groff v. United States, 72 Fed. Cl. 68, 70 (2006).

The standard of review for a motion for judgment on the administrative record under RCFC 52.1 depends upon the specific law to be applied in the specific case. See Rules Committee Note to RCFC 52.1; Rominger v. United States, 72 Fed. Cl. 268, 272 (2006). In the instant case, the Court is governed by well-settled standards governing review of military correction board decisions. Once a plaintiff has sought relief from a military corrections board, he is bound by that board's determination unless he can demonstrate that the board's determination was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. Martinez v. United States, 333 F.3d 1295, 1305 (Fed. Cir.

2003); see also Metz, 466 F.3d at 998. Plaintiff can only meet that considerable burden by presenting "cogent and convincing evidence" that the ABCMR's decision below was in error. Dorl v. United States, 200 Ct. Cl. 626, 633, cert. den., 414 U.S. 1032 (1973).

This standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." Heisig v. United States, 719 F.2d 1153, 1157 (Fed. Cir. 1983). Because the Court of Federal Claims does not sit as a "super correction board," when substantial evidence supports a board's action, and when that action is reasonable in light of all the evidence presented, the Court will not disturb the result. Van Cleave v. United States, 70 Fed. Cl. 674, 678-79 (2006).

Judicial review in this case is limited to the administrative record before the ABCMR. See Wyatt v. United States, 23 Cl. Ct. 314, 319 (1991); Long v. United States, 12 Cl. Ct. 174, 177 (1987). As a general rule, courts presume civil and military officials in the armed forces act properly and in accordance with the law. Bockoven v. United States, 727 F.2d 1558, 1563 (Fed. Cir.1984). Accordingly, the plaintiff bears the burden of overcoming the "strong, but rebuttal, presumption" that the military discharges its duties "correctly, lawfully and in good faith." Bernard v. United States, 59 Fed. Cl. 497, 501 (2004), (quoting Hary v. United States, 223 Ct. Cl. 10, 17 (1980)).

### B. Plaintiff's Active Duty Separation Was Voluntary and He Cannot Demonstrate Otherwise

In Metz v. United States, the Federal Circuit held that "the issue of the voluntariness of a plaintiff's discharge is not jurisdictional; rather, it is a question that should be considered in the context of the merits of a plaintiff's case in determining whether a plaintiff can take advantage of [37 U.S.C.] § 204's money-mandating status." 466 F.3d 991, 998 (Fed. Cir. 2006) ("The normal

course when faced with a motion to dismiss raising the voluntariness issue [is] to apply the court's standard of review to the administrative decision."). Where, as here, plaintiff's separation from active duty was voluntary, plaintiff's claims "do[] not fit within 37 U.S.C. § 204" and, accordingly, plaintiff cannot succeed on the merits of his complaint. 44 F.3d at 1000.

In that regard, we note that a decision to resign or retire is presumed to be voluntary. See, e.g., Moyer, 190 F.3d at 1320. Thus, to prevail in this case, LTC Ingham must show that his separation from active duty Army was involuntary – i.e., that he separated from the active duty in reliance on "specific information, deception or improper advice" that would have mislead a reasonable person. Lynn v. United States, 58 Fed. Cl. 797, 801 (2003).

In deciding to leave activity duty before his promotion to captain, LTC Ingham contends that then CPT Martin J. Patterson, AG Branch, wrongly advised plaintiff that his selection for promotion to captain would transfer to the USAR. Compl. at 2, ¶ 6. Indeed, LTC Ingham claims that he relied on Captain Patterson's advice and "separated from the active Army on April 21, 1986, and immediately entered the [active] Army Reserve. . . . This was done on the good faith assumption that his promotion to captain would occur in the reserves on the same date as it would have while on active duty." Id. at 2-3, ¶¶ 10-11.

The administrative record, however, contradicts LTC Ingham's claims; not surprisingly, his version of events that occurred over twenty years ago simply is not substantiated by the administrative record. For example, LTC Ingham avers that he was selected for promotion to captain on or about November 26, 1985. Id. at 1, ¶ 5. However, the Captain Competitive Category, Active Component Board, did not adjourn until December 16, 1985, and did not announce its results until February 21, 1986. AR 94. Moreover, LTC Ingham's request for

withdrawal of conditional voluntary indefinite status was approved on December 4, 1985, indicating that plaintiff made his decision to leave active duty prior to that date. AR 241.

Accordingly, the administrative record demonstrates that LTC Ingham made his decision to leave active duty weeks before his promotion board had adjourned and months before the results were announced. Based on those documents, it is evident that LTC Ingham decided to leave active duty before even knowing whether he would be selected for promotion.

LTC Ingham's decision to leave the active duty Army and enter the USAR thus was independent of any advice related to promotion. Because LTC Ingham made the decision to leave the active Army before his promotion board adjourned and was announced, he could not have "materially relie[d] on the misinformation to his detriment." Covington v. Dep't of Health & Human Serv., 750 F.2d 937, 942 (Fed. Cir. 1983).

Additional administrative record evidence further undercuts LTC Ingham's version of events as recounted in his complaint. For example, LTC Ingham describes "Captain" Patterson's position as "Chief of Personnel Management and Chief of Personnel Actions" in the AG Branch, 38th Personnel and Administration Battalion. LTC Ingham then contends that "Captain" Patterson had a duty to be a "subject matter expert" in the transfer of an active duty promotion to the USAR. Id. at ¶¶ 6-7. LTC Ingham's separation orders, however, are dated January 23, 1986 and are signed by First Lieutenant ("1LT") Martin J. Patterson, an "Assistant Personnel Officer" in the 38th Personnel and Administration Battalion. AR 239. This document suggests that plaintiff's recollection of events may be distorted due to the twenty years that have elapsed since these events allegedly took place, as it indicates that Martin J. Patterson of the 38th Personnel and Administration Battalion was a First Lieutenant serving as an assistant personnel officer, and

not a captain serving as the "Chief of Personnel Management and Chief of Personnel Actions." Id.

Significantly, LTC Ingham also fails to note that he, like 1LT Patterson, was an AG officer, and apparently of the same rank. AR 246. Given that plaintiff and Mr. Patterson were both first lieutenants in the AG Branch, it would have been unreasonable for plaintiff to rely on Mr. Patterson's advise, particularly when military records indicate that there were other officers in the Adjutant General's branch that were senior to both plaintiff and Mr. Patterson. See AR 240 (orders dated 12 Feb 1996, signed by CPT James Simpson, AG Branch); AR 235 (plaintiff award dated 19 February 1996, signed for Major Thomas L. Patty, AG Branch). Thus, contrary to LTC Ingham's assertions, there is no support for his contention that he was justified in relying on the advice of Mr. Patterson, who was simply another AG first lieutenant. Indeed, a reasonable person in plaintiff's position would not have relied on the alleged misinformation. See 58 Fed. Cl. at 801.

Given the above-detailed inaccuracies in LTC Ingham's claims, plaintiff cannot meet his "burden of establishing by a preponderance of the evidence that his discharge was involuntary." McEntee v. United States, 30 Fed. Cl. 178, 183 (Fed. Cl. 1993). Because "the surrounding circumstances" do not indicate that LTC Ingham lost the ability "to exercise free choice," Scharf v. Dep't of the Air Force, 710 F.2d 1572, 1574 (Fed. Cir. 1983), he has failed to overcome the presumption that his discharge was voluntary. McEntee, 30 Fed. Cl. at 183. Accordingly, LTC Ingham cannot invoke 37 U.S.C. § 204, and judgment should be entered for the United States.

**C. The ABCMR's Decision Is Supported By Substantial Evidence**

Plaintiff submitted his initial request for relief to the ABCMR on August 23, 2000. AR

90-102. This application was forwarded by the ABCMR staff to the U.S. Total Army Personnel Command, Promotions Branch, for a staff advisory opinion. AR 88-89. LTC Ingham submitted a response to the advisory opinion on March 14, 2001. The ABCMR denied plaintiff's request for relief on April 25, 2001. AR 81-86.

On March 14, 2002, plaintiff requested reconsideration of the ABCMR's initial decision. AR 66-80. This reconsideration request included a letter from Martin J. Patterson, the officer who allegedly provided the incorrect advice to then 1LT Ingham. AR 67. On September 10, 2002, the staff of the ABCMR determined that, while a new statement was submitted from Mr. Patterson, there was no indication of the applicable provision of law that provided for the transfer of an active duty promotion selection to the USAR. Accordingly, the Director of the ABCMR denied plaintiff's reconsideration request. AR 64-65.

LTC Ingham, through an Army Legal Assistance attorney, submitted yet an additional reconsideration request on April 24, 2003. AR 61-62. This reconsideration request fatally conceded that "[t]here is little argument that, technically, he was promoted according to applicable regulations and procedures in place at the time of the promotion. The issue that should have been presented and considered by the [ABCMR] is <u>not one of actual error</u>, but one of injustice." AR 61 (emphasis added). Addressing plaintiff's renewed request for relief, the Director of the ABCMR explained that LTC Ingham's identical argument previously had been considered and rejected. AR 59-60. Next, on March 25, 2005, the Director of the ABCMR again responded to a letter from LTC Ingham, this time to Senator Bob Graham, and once more outlined the basis for the original denial of LTC Ingham's request. AR 49-51.

On December 19, 2005, LTC Ingham, through his current counsel, submitted a "new

filing" to the ABCMR, arguing that LTC Ingham was involuntarily separated based upon misrepresentation of information by the Army. AR 9-48. On July 24, 2006, the ABCMR informed LTC Ingham that his latest filing was denied. AR 1-8. The latest ABCMR determination considered the evidence provided by LTC Ingham. AR 2-4. The ABCMR did not contest LTC Ingham's claim that he received incorrect information. AR 6. Instead, the ABCMR determined that LTC Ingham already had elected to separate from active duty, independent of any putative misinformation, because he had submitted his withdrawal of Conditional Voluntary Indefinite status prior to the announcement of his promotion board results. AR 6.

The ABCMR also concluded that, even if LTC Ingham had sought advice after learning of his selection for promotion to captain, he must have known that he would not have been promoted prior to his release from active duty on April 21, 1986. Finally, the ABCMR determined that because LTC Ingham was an officer in the Adjutant General's Branch, he knew or should have known how to research the issue of whether or not a promotion selection would seamlessly transfer from active duty to the USAR, and that he should not have relied solely on the counsel of a fellow company-grade officer.[7] AR 7.

Because the ABCMR fully and reasonably both considered and rejected LTC Ingham's request for relief, it would be improper for this Court to substitute its judgment for that of the ABCMR. Additionally, plaintiff has failed to identify any specific violation of law or regulation. AR 61. The ABCMR's determination thus is supported by substantial evidence in the administrative record, and LTC Ingham has not met his burden of overcoming the "strong, but

---

[7] A company-grade officer is an officer in the rank of second lieutenant, first lieutenant, or captain.

rebuttal, presumption" that the military discharged its duties "correctly, lawfully and in good faith." Bernard, 59 Fed. Cl. at 501.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant its motion to dismiss the complaint, or in the alternative, that the Court grant its motion for judgment on the administrative record.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner by s/ B. Snee
DONALD E. KINNER
Assistant Director

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:
MAJOR JERRETT DUNLAP
United States Army Litigation Division
Military Personnel Branch
901 N. Stuart Street, Suite 400
Arlington, VA 22203-1837
Tel: (703) 696-1628
Fax: (703) 696-8126

July 6, 2007

CERTIFICATE OF FILING

I hereby certify that, on this 6th day of July 2007, I caused to be sent, via Federal Express mail, the foregoing DEFENDANT'S MOTION TO DISMISS AND, IN THE ALTERNATIVE, FOR JUDGMENT ON THE ADMINISTRATIVE RECORD addressed to the below-listed counsel. I also understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Mr. Gary Myers
78 Clark Mill Road
Weare, NH 03281

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON