# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DANIEL C. INGHAM,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 07-124C<br>(Judge Lynn J. Bush) |

## PLAINTIFF'S CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND, IN THE ALTERNATIVE, FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND IN OPPOSITION TO THE ABOVE-CAPTIONED MATTER BEING BARRED BY LACHES.

---

Pursuant to RCFC 56.1, Plaintiff respectfully requests that the Court enter judgment upon the administrative record in favor of Plaintiff. Plaintiff's separation from active duty was involuntary, grounded as it was in the misrepresentation of a government subject matter expert. The failure of the Army Board for Correction of Military Records (ABCMR) to grant relief was an abuse of discretion, arbitrary and capricious or otherwise contrary to law.

Plaintiff respectfully requests that this Court deny the defendant's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC) and RCFC

12(b)(1) for failure to state a claim upon which relief may be granted since Plaintiff's claim does not involve nonjusticiable military personnel decisions and Plaintiff's separation was not voluntary. Plaintiff also submits that laches should not bar this claim.

## STATEMENT OF THE ISSUES

1. Whether Plaintiff's claims are barred by the doctrine of laches.
2. Whether Plaintiff's claims should be dismissed because they involve nonjusticiable issues regarding military promotions.
3. Whether the Plaintiff is entitled to judgment on the administrative record because the decision of the ABCMR was arbitrary, capricious, or otherwise contrary to law.

## STATEMENT OF FACTS[1]

On October 20, 1982, Lieutenant Colonel (LTC) Ingham enlisted in the Army. AR 209.[2] He was commissioned as an officer in the Army on April 22, 1983 in the rank of second lieutenant. AR 255.

LTC Ingham served as a data automation expert and was not involved with personnel matters. AR 117 to 178 and AR 236. During the November 26, 1985 competitive category Active Component Board LTC Ingham was selected for promotion to captain. AR 25-27. The Board results were

[1] In accordance with RCFC 56.1(b), the Plaintiff also has filed a separate statement of facts upon which Plaintiff bases its cross motion for judgment on the administrative record.
[2] "AR" refers to the administrative record.

announced on February 21, 1986. AR 21-23. In late 1985, he became interested in the single track opportunities of the Active-Guard Reserve (AGR) program that would allow him to stay in the computer field and pursue an active duty career in the Army. He believed his best chance for acceptance into this program was if he were in the Army Reserve. AR 90.

To ensure that an active duty promotion to captain would follow him if he joined the reserves, he consulted then Lieutenant Martin J. Patterson. At the time, Lieutenant Patterson was in the Office of Personnel Management and Personnel Action and the subject-matter expert in LTC Ingham's command for personnel matters. AR 67. Lieutenant Patterson advised LTC Ingham that if he were to transfer into the reserves that his date of promotion to captain would not be altered. AR 67. The government concedes that this advice was wrong. AR 6. LTC Ingham relied on this misinformation and on April 21, 1986, LTC Ingham transitioned into the Army Reserves while under the impression that his promotion to captain would occur within the same time frame as it would have on active duty. AR 90. LTC Ingham was justified in relying upon the misinformation provided by Lieutenant Patterson who was the subject matter expert. AR 67.

After LTC Ingham had transferred to the reserves, he learned that his selection for promotion to captain was null and void and he would have to

wait until he accrued enough time in the reserves for a reserve promotion to captain. LTC Ingham learned that he would have to spend several more years' time in grade as a first lieutenant before being promoted to captain in the reserves. Had LTC Ingham stayed on active duty, he would have been promoted to captain on March 1, 1987. AR 85 and 89. In 1988 LTC Ingham had been accepted into the Active Guard and Reserve (AGR) program, went on active duty, and was subsequently promoted to captain on April 21, 1989, AR 114, major on April 20, 1996, AR 113, and lieutenant colonel on April 19, 2003, AR 110. LTC Ingham did not learn that relief was available through the Army Board for Correction of Military Records (ABCMR) until the summer of 2000 and, on August 23, 2000, LTC Ingham sought relief through that mechanism. AR 90.

Prior to that time the only advice given to LTC Ingham from both superiors and colleagues was to "Suck it up and drive on." See Affidavit of LTC Ingham dated July 25, 2007 and included with this filing. His initial request for relief from the ABCMR was denied on April 25, 2001, AR 81-86. Three subsequent requests for reconsideration were filed March 14, 2002, December 19, 2002, and April 24, 2003. They were denied. On October 10, 2005, LTC Ingham, through counsel, filed a request for reconsideration arguing that his separation from active duty was involuntary because of the

misinformation that he relied upon. LTC Ingham requested that his reserve date of rank to captain be change to April 22, 1986 from April 21, 1989, his reserve date of rank to major be changed to April 27, 1993 from April 20, 1996, that he be considered for promotion to LTC by a special selection board (SSB) under 10 U.S.C. § 668, and that he receive back pay and allowances to reflect those respective dates. AR 9-48. The ABCMR denied relief. AR 2. Litigation was commenced.

## ARGUMENT

### I. Plaintiff's claim is not barred by the doctrine of laches.

Two elements are essential to establish application of the doctrine of laches: inexcusable delay on the part of the claimant and substantial prejudice to the defendant as a result of that delay. Yerxa v. United States, 11 Cl. Ct. 110, 115 (1986). The burden of establishing the doctrine's application lies with the government. Costello v. United States, 365 U.S. 265 (1961). The mere passage of time without more does not constitute laches. United Enter. & Assocs. V. United States, 70 Fed. Cl. 1, 21 (2006). The decision whether the doctrine of laches should be applied rests in the sound discretion of the Court and should not be made by reference to mechanical rules. Id.

It is only where some great injustice would be done to the defendant by a long delay by the claimant that the doctrine of laches should be set up to effect consideration of the claim on the merits. Yerxa, 11 Cl. Ct. 115. To invoke the doctrine of laches, the government must prove that the delay caused substantial monetary or evidentiary prejudice. Cornetta v. United States, 851 F.2d 132, 1372, 1378 (Fed.Cir. 1988).

Further, there is a strong public policy argument against the employment of laches against military servicemembers except in the most extreme of cases. The plain language of the Servicemembers Civil Relief Act, though not dispositive, is compelling. "The period of a servicemember's military service may not be included in computing any period limited by law." Servicemembers Civil Relief Act, 50 App. U.S.C. § 526 (2007).

The case of Cardigan v. Marsh, 693 F.2d 234 (1st Cir. 1982), cited by the government to suggest that laches should apply in this case, supports the view that laches should only be utilized in extraordinary military cases. Afterall, there the Plaintiff sought reinstatement on active duty after eighteen years, a facially ludicrous request for relief.

Plaintiff has provided the Court with an Affidavit describing his situation and the reasons for delay. The explanation contained in the Affidavit is what it is. There are no excuses contained within it. Plaintiff tried to find a solution from 1986 to 2000. During that time he was told the regulation terminated his promotion to captain. The regulation changed in 1996 but the change did not affect Plaintiff. In 2000 a chance meeting with a retired officer gave Plaintiff new insight which he immediately utilized. He did not know that this Court entertained litigation without ABCMR exhaustion. He went to the ABCMR in 2000.

The delay occurred within the realm of good faith. Plaintiff's vigorous pursuit of this matter since knowledge of a potential remedy is proof of that.

The government's assertion that it is somehow prejudiced is an interesting, albeit disingenuous, excursion into the hypothetical. In fact the ABCMR categorically concluded that Plaintiff had been provided with misinformation. This is an admission against interest in the nature of a confession. What more does Plaintiff have to show? What additional evidence is required to understand the admission? "None," is the only available answer.

Further, the government will suffer no extraordinary financial burden here. If Plaintiff should have been given an earlier promotion date, then Plaintiff should have received more money. It is that simple.

Finally, this is a wholly reasonable request. Plaintiff is not asking to go back on active duty after eighteen years. Plaintiff is merely asking to adjust a couple of dates consistent with the evidence and to have the government recognize that it is the government's responsibility for what has happened to a devoted servicemember. Plaintiff was promoted to all the ranks under discussion. The date of promotion is the only issue. This is not a case to apply the doctrine of laches.

## II. Plaintiff's claim is justiciable and should not be dismissed.

Judicial deference to the military should not be equated to judicial obsequiousness. It is clear that no federal court will promote a servicemember. Kreis v. Secretary of the Air Force, 866 F.2d 1508, 1511-12 (D.C. Cir. 1989), brings clarity to this point. Further, it is equally clear that a voluntary separation is not justiciable. Metz v. United States, 466 F.3d 991, 1000 (Fed. Cir. 2006).

If Plaintiff were requesting promotion or had separated voluntarily, this case should be dismissed on RCFC 12(b)(1) and/or 12(b)(6) grounds.

Neither occurred here.

Firstly, the separation was anything but voluntary. The ABCMR conceded that Plaintiff had been supplied with misinformation by then Lieutenant Patterson.

— Mr. Patterson from 1984 to 1986 was responsible for personnel information and advice and was a subject matter expert.

— Mr. Patterson gave Plaintiff bad advice on whether Plaintiff's promotion to captain would transfer to the reserves.

— Mr. Patterson was in error and caused Plaintiff to transfer when the more prudent course would have been to remain on active duty. This was Plaintiff's detrimental reliance.

This circumstance fits squarely within the case law which demonstrates that such a separation was involuntary because of the misinformation.

It is settled that no relief is available for a separation or retirement that is truly voluntary, Sammt v. United State, 780 F.2d 31 (Fed. Cir. 1995); McIntyre v. United States, 30 Fed. Cl. 207 (1993). In addition

retirements and separations are presumed to be voluntary. Moyer v. United States, 190 F.3d 1314 (Fed. Cir. 1999); Colon v. United States, 32 Fed. Cl. 481, 484 (1994). Rebutting the presumption is fact driven. In McIntyre v. United States, 30 Fed. Cl. 207 (1993) this Court said.

> "Determination of whether a specific… retirement (separation) qualifies as voluntary requires an examination of all the fact and circumstances." See also, Berman v. United States, 28 Fed. Cl. 580, 585 (1993).

The Courts have identified multiple circumstances which could serve to rebut the presumption. They are five in number. (1) duress or coercion forcing retirement or separation, (2) government misrepresentation of information relied upon by Applicant to Applicant's detriment, (3) Applicant's attempt to withdraw the retirement or separation prior to the effective date, (4) retirement or separation under time pressure and (5) Applicant is not mentally competent to appreciate the consequence of his retirement or separation decision. Nickerson v. United States, 35 Fed. Cl. 581, 586 (1996).

We first note what this case does not include. There was no (1) duress or coercion, (2) withdrawal prior to the effective date, (4) time pressure or (5) mental incompetence. What remains is government misrepresentation.

The test for voluntariness is not a subjective standard, rather it is an objective reasonable person standard. Kim v. U.S., 47 Fed. Cl. 493, 501 (2000). The Court in Kim framed the question thusly, "The question before the Court is whether plaintiff exercised a free choice in making the decision to retire or resign." Id. at 497. See also Covington v. DHHS, 750 F.2d 937, 943 (Fed. Cir. 1984) where the Court said:

> "A decision made with 'blinders on,' based on... a lack of information cannot be binding as a matter of fundamental fairness and due process."

Kim requires that the agency misrepresented information and that Plaintiff detrimentally relied upon it. Importantly this Court said:

> "Establishing that the agency intentionally deceived the employee, however, is not required for the court to declare a resignation voluntary. The misleading information can be negligently or even innocently provided; if the employee materially relied on the misinformation to his detriment, his retirement (separation) is considered involuntary." Id. at 942. (Emphasis ours.)

In the instant case then Lieutenant Patterson by his own admission either negligently or innocently provided wrong information to Plaintiff regarding the impact of his leaving active service prior to the effective date of Plaintiff's promotion to captain. Plaintiff detrimentally relied upon that advice. That conclusion cannot be disputed.

Secondly, this case is not about a promotion. The instant case is distinguishable from those cases cited by the government. In Kreis and the line of cases cited by the government the Court was asked to promote an individual who was not selected for promotion.

Plaintiff, conversely was promoted without difficulty to captain, major and lieutenant colonel. These promotion decisions were made and are fixed. What Plaintiff is asking this Court to do is to recognize that an already existing event, namely promotion, should have occurred at an earlier date due to the misrepresentation of the government. Such a decision would harbor none of the pitfalls suggested by Kreis and that line of cases. Further, such a decision would have no adverse impact upon any other servicemember given the elapsed time.

Finally, the date for promotion to captain is conceded by the government to be March 1, 1987, so there is no dispute as to that date. Additionally the date for promotion to Major can be easily calculated by the Court ordering such calculation by Defendant. In addition Plaintiff has asked for an SSB for promotion to LTC, a request well within the purview of this court. If the Court would prefer a date certain, that too can be provided by Defendant.

The government's efforts to make this case complex founder on the shoals of simplicity.

## III. This Court should grant Plaintiff's Motion for Judgment on the Administrative Record.

Plaintiff has demonstrated that he received information from an officer charged with knowledge of a particular subject matter which information with respect to that subject matter was wrong.

The government's response is that the provider of the mis-information was just a first lieutenant and could not be relied upon and that Plaintiff as an Adjutant General Officer should have known how to find the proper information.

It is generous to call these propositions naïve. Does the government seriously suggest that a uniformed servicemember who seeks advice from someone who holds himself out to be a knowledgeable subject matter source of information by title, job description, rank and grade should disregard the advice and seek a higher ranking individual for confirmation? Any logical extension of this novel theory inexorably leads to chaos. No colonel can rely upon the advice of a captain. A four star general could not rely upon the advice of anyone in uniform.

The reality was that Lieutenant Patterson was the "go to" guy on personnel issues and Plaintiff "went to" him. This is the way it is done. This is the way it has always been done. First Lieutenants are adults. They lead subordinates. They accept responsibility.

Plaintiff was a data guy, immersed in his computers. It is beyond disingenuous for the government to suggest he either was or could have been a personnel expert. In a compartmentalized military people like Plaintiff go to people like Lieutenant Patterson for advice. That is the way it works. The government knows this.

Finally, Plaintiff may have one or two irrelevant facts wrong. Mr. Patterson may have one or two irrelevant facts wrong. Mr. Patterson, for example, avers in his statement that he was the chief of his department at the relevant times. AR 67. Maybe he was just the assistant who was supposed to give good advice to a soldier who needed good advice. His position is irrelevant. His area of responsibility is not.

The unvarnished fact remains that the government has conceded that Mr. Patterson uttered a misrepresentation in his official capacity. All of the enumerated consequences flowed from that seminal

admission. Efforts by the government to suggest that confusion exists here are in truth efforts at illusion.

## CONCLUSION

For the foregoing reasons Plaintiff respectfully requests the Court grant his Cross Motion for Judgment on the Administrative Record.

Dated: July 26, 2007

Respectfully submitted,

Gary Myers
Counsel for Plaintiff
D.C. Bar # 157115
78 Clark Mill Road
Weare, NH 03281
Tel: 800-355-1095
Fax: 603-529-3009
Email: myers@mclaw.us