**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| Daniel D. Ingham, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07-124C |
| | ) | (Judge Lynn J. Bush) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS AND, IN THE ALTERNATIVE, FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD, AND DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD, AND DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO CONSIDER ITS AFFIDAVIT**

Plaintiff's claim that he was involuntarily separated from the active duty Army due to misinformation is barred by the doctrine of laches, as plaintiff has no excuse for waiting nearly twenty years to file this complaint, and because allowing plaintiff to proceed with his action would cause substantial prejudice to the Government. Morever, plaintiff's request that he be promoted retroactively is a nonjusticiable military personnel issue. Finally, substantial evidence supports the decision of the Army Board for Correction of Military Records ("ABCMR") that plaintiff did not reasonably rely on the alleged misinformation and that his discharge was voluntary. Accordingly, plaintiff's complaint should be dismissed or, in the alternative, the Government's motion for judgment upon the administrative record granted.

## I. The Doctrine of Laches Bars Plaintiff's Claims

Plaintiff acknowledges the two elements necessary for a cause of action to be barred by the doctrine of laches, i.e., inexcusable delay on the part of the claimant and substantial prejudice

to the defendant as a result of that delay. Pl. Cross Mot. at 5.[1] The Government has established that the laches elements are satisfied here and, accordingly, plaintiff's claims should be barred.

**A. Plaintiff's Delay In Seeking Relief Was Inexcusable**

Regarding inexcusable delay, Lieutenant Colonel Ingham relies on an affidavit in an attempt to explain his nearly twenty year delay in bringing his claim.[2] Although Lt. Col. Ingham claims he "tried to find a solution from 1986 to 2000," he does not demonstrate what steps he took during those fourteen years. He does not indicate he sought legal counsel or took any measures above casual conversations with military personnel to "find a solution." Even plaintiff's reference to an alleged "chance meeting" with a retired officer indicates that Lt. Col. Ingham was not actively pursuing a remedy, but only found out about the ABCMR by "chance." Id. This casual attempt to "find a solution" without actively researching available remedies demonstrates that plaintiff's failure to file this cause of action for nearly twenty years was inexcusable.

Moreover, ignorance of legal rights does not preclude the application of the doctrine of

---

[1] Plaintiff's Cross Motion for Judgment on the Administrative Record and Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss and, in the Alternative, for Judgment on the Administrative Record and in Opposition to the Above-Captioned Matter Being Barred by Laches (hereinafter, "Pl. Cross Mot.").

[2] Although we respond to the factual allegations in Lt. Col. Ingham's proffered affidavit, there is no reason for the court to consider such extra-record evidence in this case. See, e.g., Cardinal Maintenance Service, Inc. v. United States, 63 Fed.Cl. 98, 105 (Fed. Cl. 2004) (sustaining the government's "object[ions] to the introduction of . . . affidavits on the grounds that the affidavits are both outside the administrative record and otherwise inadmissible [hearsay]" and explaining that "[s]upplementation of the record is . . . allowed [only] in limited circumstances where the record is insufficient for the court to render a decision").

laches where, as here, plaintiff reasonably could have learned of his rights. The Federal Circuit thus explained that "'[t]he law is well settled that, where the question of laches is in issue, the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry.'" Advanced Cardiovascular Sys. v. SciMed Life Sys., 988 F.2d 1157, 1162 (Fed. Cir. 1993) (quoting Johnston v. Standard Mining Co., 148 U.S. 360, 370 (1893)). It is clear that the facts as they were known to Lt. Col. Ingham were sufficient to put him on notice that a further legal inquiry was necessary long before he filed his complaint in the instant case. In fact, Lt. Col. Ingham acknowledges that "[w]ithin several months of transferring to the reserves [he] knew that [the] advice [from Mr. Patterson] was wrong." Pl. Affidavit at ¶ 2. Lt. Col. Ingham admits that although "[f]or years this situation gnawed at [him]," he only discussed the issue with fellow officers. Id. at ¶ 7. Finally, even after Lt. Col. Ingham learned about the ABCMR in 2000 through yet another casual conversation, plaintiff waited another six years before filing the instant complaint.

There is no question that Lt. Col. Ingham could have taken steps to clarify his rights in a far more timely manner. As an active duty member of the United States Army Reserve, ("USAR"), plaintiff could have obtained legal assistance from an Army attorney at no cost. See Army Reg. 27-3, ¶ 3-6(g)(4)(x) (stating that Army legal assistance attorneys are required to provide legal advice for issues involving the correction of military records). Indeed, an Army legal assistance attorney represented plaintiff before the ABCMR in 2003. AR 61-62. Plaintiff provides no reason for failing to seek such assistance, which was available from the time plaintiff learned that he would not be promoted.

Lt. Col. Ingham further claims that his "vigorous pursuit of this matter" since becoming aware of a potential remedy is proof that the "delay occurred within the realm of good faith." Pl. Cross Mot. at 7. However, the fact that plaintiff waited approximately six years from his ABCMR filing to file the instant action – not to mention Lt. Col. Ingham's inexcusable fourteen year delay prior to his ABCMR filing – severely undercuts his assertion that he "vigorous[ly]" pursued his putative legal rights. Although Lt. Col. Ingham concedes that a request to be reinstated on active duty after eighteen years is "facially ludicrous," Lt. Col. Ingham fails to explain why his challenge to his discharge from active duty, brought nearly twenty years after the fact, is distinguishable. Pl. Cross Mot. at 6.

Plaintiff argues there is "a strong public policy argument against the employment of laches against military servicemembers except in the most extreme of cases." Id. (citing Servicemembers Civil Relief Act, ("SCRA") 40 App. U.S.C. § 526 (2007)). Nevertheless, it is settled that the SCRA does not preclude laches from barring plaintiff's claims. See, e.g., Hankins v. United States, 7 Cl. Ct. 698 (1985) (holding laches barred claims of military personnel were not precluded by 50 U.S.C. § 525, the predecessor to the SCRA); Andrews v. United States, 6 Cl. Ct. 204 (1984), aff'd 770 F.2d 179 (Fed. Cir. 1985) (holding same, where plaintiffs delayed between four and one half and seven years). Finally, Lt. Col. Ingham fails to address – as he must, to avoid laches – how his military service interfered with his ability to file a complaint in this court or to pursue other possible remedies. In sum, plaintiff offers no credible excuse for his failure to seek relief in a timely manner.

**B. Allowing Plaintiff's Claims Would Cause Defendant Substantial Prejudice**

The United States has established the prejudice plaintiff's lengthy delay in bringing this

cause of action would caused the Government if permitted to proceed. See Def. Mot. to Dismiss at 5-7. Lt. Col. Ingham's assertion that the Government's claim of prejudice is "disingenuous" is unsupported and contrary to the facts surrounding his claim. Pl. Cross Mot. at 7. To support his claim that his delay caused no prejudice to the Government, plaintiff argues that "the ABCMR categorically concluded that Plaintiff had been provided with misinformation." Id.

It is true that the ABCMR did state that plaintiff's "contention that he received incorrect information from the retired AG captain is not disputed." AR 6. However, that statement was far from a finding by the ABCMR that Lt. Col. Ingham was provided incorrect information. Indeed, in denying plaintiff's request, the ABCMR determined that because Lt. Col. Ingham had requested to withdraw his Conditional Voluntary Indefinite ("CVI") status before his promotion had been decided or announced, he had "made the decision to separate well before knowing whether or not he was selected for promotion." Id. Thus, the ABCMR concluded that, "[a]s a result, the question of whether or not he received misinformation about transferring a promotion, of which he had no knowledge at the time he made the decision to withdraw his CVI status . . . is moot." AR 6-7. The ABCMR did not dispute plaintiff's contention regarding misinformation because an inquiry into that question was not necessary, as he was not entitled to relief even if he had been provided misinformation. Accordingly, plaintiff's claim that "[t]his is an admission against interest in the nature of a confession" is unsupported. Pl. Cross Mot. at 7.

In any event, even if the ABCMR's statement (that it did not dispute plaintiff's contention regarding the alleged misinformation) could be read as an admission – a point not conceded by the Government as discussed above – laches still would bar plaintiff's claim here. That is, under Lt. Col. Ingham's theory, a plaintiff always could cite favorable evidence on the

merits to avoid laches. That cannot be the case as such a result would render the laches defense a nullity.

Plaintiff's only response to the Government's economic prejudice argument, see Def. Mot. to Dismiss at 6, is the meaningless tautology that "[i]f Plaintiff should have been given an earlier promotion date, then [he] should have received more money. It is that simple." Pl. Cross Mot. at 8. Lt. Col. Ingham fails to acknowledge, however, that during the periods when he claims that he should have been paid at a higher pay grade, he was not performing the duties of that higher pay grade. For example, while plaintiff was being paid as a captain, he was performing the duties of a captain. If plaintiff were paid in the pay grade of a major for performing the duties of a captain, the Army would suffer the economic prejudice of paying plaintiff more than the value it received from his services. This artificially inflated financial burden would have been avoided had plaintiff brought his claim in a timely manner. Accordingly, the Government has suffered economic prejudice.

Plaintiff also completely fails to address the operational prejudice the Government would suffer if Lt. Col. Ingham's claims were permitted to proceed. Def. Mot. to Dismiss at 6. First, the Government has established that Martin J. Patterson's letter, submitted to the ABCMR in support of Lt. Col. Ingham's version of events, itself reveals that Mr. Patterson's ability to recall what happened has been impaired by Lt. Col. Ingham's excessive delay in bringing this case. Id. Second, it would be nearly impossible for the Government to locate any additional witnesses on its behalf after nearly twenty years.

The Government has established that plaintiff's delay is inexcusable and that such delay would cause substantial prejudice to the Government. Therefore, plaintiff's claims in this case

should be barred by the doctrine of laches. See Cornetta v. United States, 851 F.2d 1372, 1378-80 (Fed. Cir. 1988).

## II. Plaintiff's Claims For Revised Promotion Dates Is Nonjusticiable

Lt. Col. Ingham requests the Court to "recognize that an already existing event, namely promotion, should have occurred at an earlier date due to the misrepresentation of the government." Pl. Cross Mot. at 12. That argument, however, is premised on the unfounded assertion that an earlier promotion board would have promoted plaintiff simply because a later board actually did so. Indeed, Lt. Col. Ingham's assumption is not in accord with military practice.

USAR officers have at least two opportunities to be selected for promotion. An officer not selected by the first promotion board has a second chance to be considered for promotion. See generally Bockoven v. Marsh, 727 F.2d 1558, 1559-60 (Fed. Cir. 1984) (describing the promotion process for USAR officers). Again, Lt. Col. Ingham assumes that, because a later board selected him for promotion, an earlier board would have done the same. Pl. Cross Mot. at 12 (claiming "[t]hese promotion decisions were made and are fixed."). But, if plaintiff were correct, and one could always expect promotion boards to agree with each other, officers would never be selected by a second promotion board after having been refused by an earlier board. But, as Bockoven explains, plaintiff's assumption is invalid. See 727 F.2d at 1559-60.

Because Lt. Col. Ingham's claims would require this Court to determine whether earlier promotion boards indeed would have selected him for promotion on the averred earlier dates, plaintiff's request presents a nonjusticiable issue. See Kreis v. Secretary of the Air Force, 866

F.2d 1508, 1511-12 (D.C. Cir. 1989).

Moreover, the discretionary nature of promotion decisions – and, in turn, the speculative nature of plaintiff's claim in his complaint that he should have been selected for various promotions at earlier dates – is demonstrated by plaintiff's request for a special selection board ("SSB") for promotion to lieutenant colonel. See Pl. Cross Mot. at 12. As explained in our motion to dismiss, plaintiff's acknowledgment of the need for an SSB reveals that revising his promotion dates cannot be accomplished by this Court. On the other hand, plaintiff notably fails to explain why an SSB is appropriate to determine his promotion date for lieutenant colonel – a rank to which he already has been promoted – but not for the other claimed dates of promotions. See Def. Mot. to Dismiss at 9. For example, plaintiff does not request an SSB to determine what his promotion date to major should have been.

The arbitrariness of requesting an SSB for one promotion, but not for the others, demonstrates that even Lt. Col. Ingham understands both that promotion decisions are discretionary acts committed solely to the military and executive branch, and that calculating what his promotion dates would have been, but for the alleged misinformation, is far from an objective mathematical exercise. Accordingly, this Court cannot promote Lt. Col. Ingham retroactively at various dates based on his mere speculation about whether and when a promotion board would have promoted him. See Kreis, 866 F.2d at 1511-12.[3]

[3] We note that although Lt. Col. Ingham states that he would have been promoted to captain on March 1, 1987, see Pl. Statement of Facts at ¶ 5, plaintiff's complaint requests back pay and allowances as a captain from April 22, 1986 to April 21, 1993. Compl. at ¶ 18. Accordingly, Lt. Col. Ingham claims pay as a captain ten months prior to the date he claims he would have been promoted.

## III. The Court Should Grant the Government's Motion for Judgment Upon the Administrative Record

Even if this Court reaches the merits of Lt. Col. Ingham's case, the Government has established that the ABCMR's decision was not arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes or regulations. Def. Mot. to Dismiss at 11-12. Plaintiff has failed to present "cogent and convincing evidence" that the ABCMR's decision was in error. Id. (quoting Dorl v. United States, 200 Ct. Cl. 626, 633, cert. den., 414 U.S. 1032 (1973)). Accordingly, the Government is entitled to judgment upon the administrative record.

### A. Plaintiff Has Failed to Overcome the Presumption of Voluntariness

Because Lt. Col. Ingham decided to leave active duty independent of any information regarding his promotion to captain, his separation from active duty was voluntary. Accordingly, Lt. Col. Ingham cannot prevail on the merits of his claim. Metz v. United States, 466 F.3d 991, 1000 (Fed. Cir. 2006).

First, Lt. Col. Ingham acknowledges that separations are presumed to be voluntary. See Pl. Cross Mot. at 10 (citing Moyer v. United States, 190 F.3d 1314 (Fed. Cir. 1999), and Colon v. United States, 32 Fed. Cl. 481, 484 (1994)). Although plaintiff avers that "government misrepresentation of information relied upon by Applicant to Applicant's detriment" overcomes the presumption of voluntariness in this case, see id., the administrative record squarely supports the ABCMR's determination that plaintiff's decision to leave active duty was made independent of any advice provided by Mr. Patterson. Because Lt. Col. Ingham cannot establish that he reasonably and detrimentally relied upon the alleged misinformation provided by Mr. Patterson, plaintiff has failed to overcome the presumption of voluntariness.

Plaintiff claims that Mr. Patterson "caused Plaintiff to transfer when the more prudent course would have been to remain on active duty." Pl. Cross Mot. at 9. This assertion, however, is belied by the timing of various events as described in Lt. Col. Ingham's filings. Plaintiff concedes, for example, that his request for withdrawal of his application for extended active duty was approved on December 4, 1985. See Pl. Statement of Facts, ¶ 4; Def. Statement of Facts, ¶ 4. This means that sometime prior to December 1985, and before the captain promotion board had even convened, plaintiff determined that he was going to leave active duty. See Pl. Statement of Facts, ¶ 5; Def. Statement of Facts, ¶ 5. Because the captain promotion results were not released until February 21, 1986 – one month after plaintiff had orders releasing him from active duty, effective April 21, 1986 – plaintiff made his decision to leave active duty independent of any knowledge regarding if or when he would be promoted. Pl. Statement of Facts, ¶ 6; Def. Statement of Facts, ¶ 6. Any claim that Lt. Col. Ingham's decision to leave active duty was involuntary is unsupported by the record evidence, as his decision to leave active duty was made prior to, and, therefore, independent of, any advice from Mr. Patterson.

### B. Plaintiff Must, But Cannot, Establish That a Withdrawal of Resignation Would Have Been Accepted

Lt. Col. Ingham claims that he "did nothing to attempt to eliminate or change his separation date to accommodate an active duty promotion to Captain in reliance upon the misinformation that such promotion to Captain in reliance upon the misinformation that such elimination or change was not necessary." Pl. Statement of Facts, ¶ 5. Plaintiff, however, offers no evidence that he would have changed his decision to leave active duty, even if he had been aware that his promotion date would not follow him into the reserve component.

Moreover, Lt. Col. Ingham offers no evidence – and, indeed, has not even plead – that his CVI status would have been restored, or that his orders removing him from active duty would have been rescinded, if he had in fact decided to stay on active duty. See, e.g., Brown v. United States, 30 Fed. Cl. 227, 230-31 (1993) (citing Cole v. United States, 231 Ct. Cl. 702, 704, 689 F.2d 1040 (1982), for the proposition that "[t]he decision to deny or accept a withdrawal of resignation from service rests solely within the discretion of the Army."). Because Lt. Col. Ingham voluntarily requested that he be separated from active duty, and because the decision to accept a withdrawal of resignation is a nonjusticiable military personnel decision resting "solely within the discretion of the Army," this Court lacks jurisdiction to consider plaintiff's claims.

### C. The ABCMR'S Decision Is Supported By Substantial Evidence

Lt. Col. Ingham's remaining arguments are limited to just two assertions. First, plaintiff claims that then-Lieutenant Patterson's title, job description, rank, and grade was such that the ABCMR was precluded from determining that it was unreasonable for plaintiff to rely on his advice. Pl. Cross Mot. at 13. Plaintiff offers no evidentiary support for this assertion. Plaintiff beseeches the Court to find that the ABCMR's position was "naïve." Id. Additionally, plaintiff invites the Court to overrule the ABCMR's determination regarding how advice is given in the military. Id. Plaintiff's request is, in essence, one for the Court to reweigh the evidence and to act as a "super correction board," ignoring the ABCMR's expertise in military matters. Van Cleave v. United States, 70 Fed. Cl. 674, 678-79 (2006). That, the Court should not, indeed cannot, do.

Plaintiff's second contention is that "it is beyond disingenuous for the government to suggest he either was or could have been a personnel expert." Pl. Cross Mot. at 14. The

ABCMR, however, determined that plaintiff, as an officer in the Adjutant General ("AG") branch of the Army, "knew or should have know how to research the issue" regarding his promotion. AR 7. There are sufficient facts to support this finding by the ABCMR. See Def. Mot. to Dismiss at 15. Plaintiff contends he was "a data guy, immersed in his computers," see Pl. Cross Mot. at 14, and that then-Lieutenant Patterson held himself out as a "knowledgeable subject matter source of information." Id. at 13.

While plaintiff offers no support for those assertions, other than his self-serving affidavit, the ABCMR's determination is supported by the fact that Lt. Patterson was an "Assistant Personnel Officer" (AR 239), while plaintiff served as an "assistant adjutant." AR 106. The ABCMR's decisions with respect to military subject matters are entitled to deference, and it is not proper for the Court to second-guess the ABCMR on military issues, particularly where its conclusions are supported by substantial evidence. See Heisig v. United States, 719 F.2d 1153, 1157 (Fed. Cir. 1983). Accordingly, the ABCMR's determination that an AG officer such as Lt. Col. Ingham should have known how to research the personnel question at issue here is entitled to deference.

Finally, Lt. Col. Ingham's arguments simply fail to address the ABCMR's critical determination that:

> There is no possibility that the applicant made the decision to withdraw his CVI status after learning that he was selected for promotion to CPT on the ADL [Active Duty List]. Therefore, the decision that he was going to be voluntarily relieved from active duty, by virtue of his voluntary request to withdraw his CVI status, took place well before any knowledge of a pending promotion to CPT on the ADL.

AR 7. Again, as discussed in detail above, substantial evidence supports the ABCMR's

determination that plaintiff's decision to separate from the active Army was made prior to, and independent of, any alleged advice given by Lieutenant Patterson. Accordingly, the ABCMR's determination is not arbitrary, capricious, unsupported by substantial evidence, or contrary to law or regulation, and must be upheld by the Court.

## IV. Conclusion

For the foregoing reasons, the Government respectfully requests that the Court grant its motion to dismiss the complaint or, in the alternative, to grant the Government's motion for judgment on the administrative record and to deny plaintiff's cross motion.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274
Fax: (202) 514-8624

OF COUNSEL:

MAJOR JERRETT W. DUNLAP
United States Army Litigation Division
Military Personnel Branch
901 N. Stuart Street, Suite 400

August 9, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that, on this 9th day of August 2007, I caused to be filed in the United States Court of Federal Claims the foregoing DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND, IN THE ALTERNATIVE, FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD, DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD, AND DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO CONSIDER ITS AFFIDAVIT. I understand that notice of this filing will be sent to all parties by operation of the Court’s electronic filing system. Parties may access this filing through the Court’s system.

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON