# In the United States Court of Federal Claims

No. 07-124 C

(Filed November 26, 2007)

**UNPUBLISHED**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| DANIEL D. INGHAM, | * | Military Pay; Retroactive Promotion |
| | * | and Back Pay; |
| *Plaintiff*, | * | Military Pay Act, 37 U.S.C. § |
| | * | 204(a)(1) (2000); 28 U.S.C. § 2501 |
| v. | * | (2000); Tolling of the Statute of |
| | * | Limitations under the |
| THE UNITED STATES, | * | Servicemembers Civil Relief Act, 50 |
| | * | U.S.C. app. 526(a) (Supp. IV 2004); |
| *Defendant*. | * | RCFC 52.1; Laches. |
| * * * * * * * * * * * * * * | * | |

*Gary Myers*, Weare, NH, for plaintiff.

*Matthew H. Solomson*, United States Department of Justice, with whom were *Peter D. Keisler*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Donald E. Kinner*, Assistant Director, Washington, D.C., for defendant. *Major Jerrett Dunlap*, United States Army Litigation Division, Military Personnel Branch, Arlington, VA, of counsel.

---

**OPINION**

---

**Bush**, *Judge*.

This matter is before the court on defendant's motion to dismiss, the parties' cross-motions for judgment on the administrative record and plaintiff's motion for leave to consider its affidavit which the court deems to be plaintiff's motion to supplement the administrative record. The parties' motions have been fully

briefed, and oral argument was neither requested by the parties nor required by the court. For the reasons set forth herein, defendant's motion for judgment on the administrative record is granted.

## BACKGROUND[1]

### I. Factual History

Plaintiff Daniel D. Ingham (LTC Ingham) is currently a lieutenant colonel in the United States Army Reserves (the Reserves). Compl. ¶ 2. Plaintiff filed suit in this court on February 23, 2007, seeking back pay and allowances related to allegedly delayed promotion(s) in the Reserves, correction of his military records and the convening of selection boards to decide if he would have earlier received the rank of lieutenant colonel in the Reserves. *Id.* ¶ 18.

While serving as a first lieutenant on active duty in the Army in 1985, LTC Ingham alleges that he was selected for promotion to captain by the Captain Competitive Category, Active Component Board on November 26, 1985. Compl. ¶ 5. Plaintiff admits that the anticipated date of his promotion was unknown at the time of his selection. *Id.* ¶ 5. During that same time period, plaintiff claims that he wanted to transfer to the Reserves, but also wanted to know whether the transfer would affect his anticipated promotion to captain. *Id.* ¶¶ 5-6. Plaintiff then sought advice from Captain Martin J. Patterson, an officer in the Adjutant General's Branch, as to whether his selection for promotion to captain would be affected if he transferred to the Reserves. *Id.* ¶ 6. Plaintiff alleges that Captain Patterson reassured him that plaintiff's transfer to the Reserves would not affect his selection for promotion to captain and the "date of rank associated therewith would be unchanged and would convey to the reserves." *Id.* ¶ 9. Plaintiff separated from the Army on April 21, 1986, and immediately entered the Reserves. *Id.* ¶ 11. Plaintiff alleges that he made this transfer "on the good faith assumption that his promotion to captain would occur in the reserves on the same date as it would have while on active duty." *Id.*

---

[1]/ The facts recited here are undisputed, unless otherwise indicated.

Upon transferring to the Reserves, LTC Ingham inquired about his selection for promotion to captain. The Reserves told plaintiff that his anticipated promotion date would not automatically be adopted by the Reserves, and that he would have to wait until he was selected for captain in the Reserves. *Id*. ¶12. While in the Reserves, LTC Ingham was promoted to captain on April 21, 1989, to major on April 20, 1996, and to lieutenant colonel on April 19, 2003. *Id.* ¶ 13.

LTC Ingham contends that he received erroneous advice from Captain Patterson. Compl. ¶ 10. LTC Ingham further contends that based on the erroneous advice from Captain Patterson, plaintiff made a decision to separate from the Army on April 21, 1986. *Id.* ¶ 11. Plaintiff claims that he relied on Captain Patterson's advice because Captain Patterson, at the time, was the Chief of Personnel Management and Chief of Personnel Actions in the Nelligen Camp Team, 198th Personnel Service Company, 38th Personnel and Administration Battalion, VII Corps, Nelligen, West Germany. *Id.* ¶ 7. Plaintiff claims that Captain Patterson was the "subject matter expert" in this area and that he was justified in relying on Captain Patterson's advice. *Id*.

LTC Ingham first took action to protest his April 1986 allegedly involuntary resignation from the Army on August 23, 2000, when he began a series of requests for corrective action before the Army Board for Correction of Military Records (ABCMR or the Board). Compl. ¶¶ 14-15. Plaintiff's initial application to the ABCMR requested an adjustment to his date of rank for captain from April 21, 1989 to April 22, 1986, and for major from April 20, 1996 to April 22, 1993, with an entitlement to back pay. AR at 91. He further requested that a special board be convened to determine his promotion to lieutenant colonel. AR at 91. The ABCMR denied his request for relief on April 25, 2001, stating that plaintiff had failed to submit relevant evidence "to demonstrate the existence of probable error or injustice." AR at 86.

On March 14, 2002, LTC Ingham requested that the ABCMR reconsider its decision. Compl. ¶ 14. As new evidence, plaintiff included a letter from Captain Patterson. While apologizing for any harm he may have inflicted upon LTC Ingham's career by giving "what appears to be incorrect information," the letter indicated that Captain Patterson did not recall the advice that he had given plaintiff, nor did he remember regulation he had relied upon to provide the advice. AR at

67. Despite plaintiff's attempt to produce new evidence not previously available to the ABCMR, the Board denied his reconsideration request on the basis that plaintiff failed to cite any "provision of law or regulation that provided for the transfer of an active duty promotion selection to the Reserve." AR at 64. LTC Ingham submitted yet another reconsideration request on April 24, 2003. Compl. ¶ 14. The Board denied that request, as well, noting that plaintiff had not provided new relevant evidence and that his reconsideration request had been previously considered and denied. AR at 59-60.

On December 19, 2005,[2] with the assistance of current counsel, LTC Ingham made a final request to the Board, arguing that his separation from the Army was involuntary because he had relied on erroneous information provided by Captain Patterson. AR at 9-15. The Board denied plaintiff's request on July 24, 2006. AR at 1-8. Although the Board did not contest plaintiff's claim that he had received incorrect information, the Board determined that plaintiff had already decided to separate from active duty prior to receiving incorrect information. Compl. ¶ 16; AR at 6-7. Thus, the Board concluded that plaintiff's separation was voluntary. AR at 6-7. On February 23, 2007, plaintiff commenced litigation in this court, requesting the same relief that was refused by the Board.

Defendant has moved to dismiss plaintiff's complaint on the basis that it is barred by laches. Def.'s Mot. at 4. Defendant's position is that plaintiff waited almost twenty years to file his complaint, and that such an inexcusable delay has resulted in prejudice to the government. *Id*. The court's decision in this matter will depend on whether the government has established the necessary elements of laches to warrant the dismissal of plaintiff's complaint.

## II. Procedural History

Defendant first filed a motion to dismiss for lack of subject matter jurisdiction on March 22, 2007. Defendant asserted that plaintiff's complaint

---

[2]/ Although the complaint cites October 10, 2005 as the date of plaintiff's final request to the ABCMR, the correct date is December 19, 2005, as reflected in the administrative record. AR at 9.

should be dismissed because it was time-barred by the applicable statute of limitations. In response, on or about April 23, 2007, plaintiff filed a motion in opposition to defendant's motion to dismiss. On April 26, 2007, defendant submitted its reply in support of its motion to dismiss for lack of subject matter jurisdiction. After briefing had closed, the court issued an order dated May 16, 2007, noting: "[P]laintiff's military claims and requests for equitable relief accrued sometime between April 21, 1986 and April 21, 1989. Plaintiff filed suit here on February 23, 2007, more than seventeen years later. This court's statute of limitations allows six years after the accrual of a claim for a filing of suit. 28 U.S.C. § 2501." Order of May 16, 2007, at 8. In the interests of fundamental justice, the court raised two issues *sua sponte*: (1) whether the Servicemembers Civil Relief Act, 50 U.S.C. app. § 526(a) (Supp. IV 2004) (formerly codified as 50 U.S.C. § 525 (2000)) which tolls the running of this court's six year limitation period for a plaintiff serving his country on military active duty, applies to the present facts, and (2) whether the doctrine of laches, notwithstanding any tolling provided by 50 U.S.C. app. § 526(a), bars plaintiff's claims in this case.

Pursuant to the court's Order dated May 16, 2007, the parties proposed a new briefing schedule to resolve the issues raised by the court. By Order dated May 30, 2007, the court set the briefing schedule proposed by the parties, and denied defendant's motion to dismiss, filed March 22, 2007, as moot. Currently pending before this court are defendant's motion to dismiss and, in the alternative, for judgment on the administrative record; plaintiff's cross-motion for judgment on the administrative record; and plaintiff's motion for leave to consider its affidavit.

## DISCUSSION

### I. Jurisdiction

Pursuant to the Tucker Act, the United States Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2000). The Tucker Act, however, "does not create any

substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976) (citation omitted). A plaintiff coming before the United States Court of Federal Claims, therefore, must also identify a separate provision of law conferring a substantive right for money damages against the United States. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004).

In the present case, plaintiff's claim falls under the Military Pay Act, 37 U.S.C. § 204(a)(1)(2000), because he is requesting back pay. Claims for back pay in military cases are within the jurisdiction of this court. *See Spehr v. United States*, 51 Fed. Cl. 69, 81 (2001) (stating that "[i]t is well-established that claims for back pay stemming from allegedly unlawful separation from active duty in the armed services are within the jurisdiction of the Court of Federal Claims under 28 U.S.C. § 1491(a)"). Thus, plaintiff has established that the Court of Federal Claims has jurisdiction to hear his case.

## II. Standard of Review for a Motion for Judgment on the Administrative Record

Defendant asserts that plaintiff's complaint should be dismissed because it is barred by the doctrine of laches.[3] Def.'s Mot. at 1. Defendant also asserts that

---

[3]/ Defendant did not identify which rule governs the dismissal of claims barred by the doctrine of laches. However, courts that have examined the issue of laches have typically stated that when a laches inquiry exceeds the scope of a Rule 12(b)(6) motion to dismiss, the Rule 12(b)(6) motion is converted into a motion for summary judgment. *See Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1161, 1164-65 (Fed. Cir. 1993) (stating that the standard for a motion for summary judgment applies when matters outside the pleadings are considered by a court); *Farris v. Stanadyne/Chicago Div.*, 832 F.2d 374, 376 (7th Cir. 1987) (converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment because the court had to consider the defendant's affidavit, which was outside the pleadings). In the present case, defendant has filed an administrative record and plaintiff has sought to supplement the administrative record with an affidavit from LTC Ingham, all of which has been relied upon by the court. *See infra*. Because the court has relied on materials beyond the pleadings, the court's review of laches is more appropriate under defendant's RCFC 52.1 motion. *See infra*.

plaintiff's complaint should be dismissed, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), because plaintiff's claim involves nonjusticiable military personnel decisions. In the alternative, defendant requests the court to enter judgment upon the administrative record in favor of the United States pursuant to RCFC 52.1.

As previously stated, the court's decision whether or not to dismiss LTC Ingham's complaint turns on the doctrine of laches. The determination of whether laches bars plaintiff's claims requires the court to conduct an intensive factual analysis beyond the pleadings. *Advanced Cardiovascular*, 988 F.2d at 1161. ("[T]he defense of laches usually requires factual development beyond the content of the complaint. The facts evidencing unreasonableness of the delay, lack of excuse, and material prejudice to the defendant, are seldom set forth in the complaint. . . ."). In the present case, the court believes that neither RCFC 12(b)(1) nor 12(b)(6) is an appropriate vehicle to consider the defense of laches. Defendant has filed an administrative record and plaintiff has sought to supplement that administrative record with an affidavit from LTC Ingham, all of which the court must review to determine the applicability of the laches defense in this matter. Because the court will have to consider matters outside the pleadings, a review of the parties' cross-motions will be more appropriate under RCFC 52.1.

Under RCFC 52.1, this court will review the parties' cross-motions and determine whether, given all the disputed and undisputed facts, a party has met its burden of proof based upon the evidence in the record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). The court must make findings of fact from the administrative record as if it were conducting a trial. *Id*. The procedures set forth under RCFC 52.1 provide for an expedited trial on the record. *Id*.

## III. Supplementation of the Administrative Record

Because of the detailed factual analysis that is required to determine the existence of laches, the court grants plaintiff's motion to supplement the administrative record with an affidavit from LTC Ingham. *See Blue & Gold Fleet, LP v. United States*, 70 Fed. Cl. 487, 494 (2006), *aff'd*, 492 F.3d 1308 (Fed. Cir.

2007) (stating that the court will allow the supplementation of the administrative record when necessary for a full and complete understanding of the issues); *Rig Masters, Inc. v. United States*, 70 Fed. Cl. 413, 424 (2006) (stating that the decision to supplement the administrative record rests within the sound discretion of the trial court).

## IV. Analysis

This court previously performed an extensive analysis of the accrual date of plaintiff's claims, the results of which were set forth in the court's May 16, 2007 Order. Therein, the court stated:

> The foregoing rather lengthy discussion of precedent would not normally be needed in a military discharge case. But here, plaintiff was discharged from active duty not once but twice, and plaintiff argues that the second discharge date, in 2005, is the correct accrual date for plaintiff's pay claims and requests for equitable relief. Pl.'s Opp. at 1. Defendant argues, instead, that "plaintiff's claim accrued sometime between April 21, 1986 – when he was discharged from active duty – and March 1, 1987, the date upon which he originally was scheduled to be promoted, but was not." Def.'s Reply at 2. Because it is the complained-of deprivation of pay which triggers the accrual of plaintiff's claims, the court finds that plaintiff's pay and equitable relief claims accrued sometime between his discharge in 1986, when it is undisputed that he was receiving all pay due his rank, and sometime in the late 1980s when he claims he should have been receiving the pay commensurate with the rank of captain, but was only receiving the pay of a first lieutenant. An estimated date for the allegedly forgone promotion, adopted by both parties for the purposes of this motion, is March 1, 1987. *See* Compl. ¶ 12; Pl.'s Opp. at 2 (stating that "the actual date of his promotion would have been March 1, 1987"); Def.'s Reply at 2. In

> any event, the date could have been no later than April 21, 1989, when plaintiff was promoted to captain in the Reserves. Compl. ¶ 13.

Order of May 16, 2007, at 7-8.

Thus, in accordance with the foregoing, plaintiff's military pay claims and requests for equitable relief accrued sometime between April 21, 1986 and April 21, 1989. Plaintiff filed suit in this court on February 23, 2007, approximately twenty years after that accrual date. It is well established that claims before this court will be barred if they are not filed within the six-year statute of limitations. 28 U.S.C. § 2501 (2000). "A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when all events have occurred to fix the Government's alleged liability entitling the claimant to demand payment and sue here for his money." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (*en banc*) (internal quotations and citations omitted). As stated, in military pay cases, the date of accrual is the date on which the military member is denied pay. *Id.* at 1303-04.

In the instant case, LTC Ingham's claims would be time-barred because he failed to file his complaint within the six-year limitations period under 28 U.S.C. § 2501. However, the six-year statute of limitations may be tolled for service members serving their country on active duty under the Servicemembers Civil Relief Act, 50 U.S.C. app. § 526(a) (Supp. IV 2004) (formerly codified at 50 U.S.C. app. § 525 (2000)). *See Bickford v. United States*, 656 F.2d 636, 639 (Ct. Cl. 1981) (holding that the six-year statute of limitations was tolled during the period the plaintiff served on active duty).[4] As a servicemember, LTC Ingham's claims are tolled by 50 U.S.C. app. § 526(a).

Although tolling of the statute of limitations is available for LTC Ingham's claims, the doctrine of laches may still operate to bar plaintiff's claims. *See*

---

[4]/ The issue of whether 50 U.S.C. app. § 526(a) applies to the present facts was initially raised *sua sponte* by the court in its order dated May 16, 2007. Defendant concedes that 50 U.S.C. app. § 526(a) applies to LTC Ingham's circumstances. Def.'s Mot. at 5.

*Deering v. United States*, 620 F.2d 242, 244 (Ct. Cl. 1980) (*en banc*) (holding that the application of 50 U.S.C. app. § 525 does not mean that servicemembers are immune from the doctrine of laches). The government argues that LTC Ingham's claims are barred by laches because of plaintiff's delay in bringing suit against the United States. Defendant asserts that since plaintiff's claims accrued sometime between April 21, 1986 and April 21, 1989, plaintiff allowed at least seventeen years and ten months to elapse between the accrual of his claims and the filing of his complaint in this court. Def.'s Mot. at 5. The government argues that plaintiff's delay in filing suit is both "unreasonable and inexcusable, and would result in severe prejudice to the defendant if permitted to proceed." *Id.* Therefore, the threshold question presented by the parties' respective motions is whether plaintiff's claims are barred by the affirmative defense of laches as asserted by defendant.

Laches is an equitable doctrine that arises from the maxim that "equity aids the vigilant, not those who slumber on their rights." *Cornetta v. United States*, 851 F.2d 1372, 1375 (Fed. Cir. 1988); *Brundage v. United States*, 504 F.2d 1382, 1384 (Ct. Cl. 1974), *cert. denied*, 421 U.S. 998 (1975). The underlying policy behind the doctrine of laches is that it encourages "speedy vindication or enforcement of rights, so that courts may arrive at safe conclusions as to the truth." *Brundage*, 504 F.2d at 1384. Because of the equitable nature of the doctrine, a court must be flexible in its application. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992). A court must examine all the facts and circumstances surrounding each individual case to determine whether a defendant has established the laches defense. *Id*. The determination of laches is left to the sound discretion of the court. *Id*.

The doctrine of laches is an affirmative defense which may be applied to military cases irrespective of the statute of limitations. *Deering*, 620 F.2d at 244; *Pepper v. United States*, 8 Cl. Ct. 666, 671 (1985), *aff'd*, 794 F.2d 1571 (Fed. Cir. 1986). To invoke the affirmative defense of laches, a defendant must satisfy two prerequisites: (1) the claimant's delay in filing suit was both unreasonable and inexcusable, and (2) the delay caused either economic prejudice or injury to the defendant's ability to mount a defense. *Cornetta*, 851 F.2d at 1378-80 (Fed. Cir. 1988). Defendant has the burden of proving that it was prejudiced by the plaintiff's delay in filing suit. *Id.* at 1380. Defendant's failure to prove both

elements prevents the application of laches. *Id*.; *Pepper*, 8 Cl. Ct. at 672.

**A. Plaintiff's Delay was Unreasonable and Inexcusable**

Delay is the first element needed to establish the defense of laches. Defendant cannot merely show that a certain amount of time has elapsed between the date a cause of action first accrued and when it was filed. *Cornetta*, 851 F.2d at 1377-78. Defendant must unequivocally show that plaintiff's delay is both unreasonable and inexcusable. *Id.* at 1378. However, caselaw has not defined the length of time that is considered unreasonable by the courts and sufficient to support a laches defense. "No fixed boundaries define the length of time deemed unreasonable, and the duration should be viewed in light of the circumstances. The period of delay is measured from the time the claimant knew or should have known about his claim to the date of the suit." *Aero Union Corp. v. United States*, 47 Fed. Cl. 677, 686 (2000); *see also A.C. Aukerman*, 960 F.2d at 1032. This means that a court is required to examine the duration of the delay in light of the surrounding circumstances.

In the present case, the government argues that LTC Ingham waited about fourteen years from the time of his discharge in April 1986 to file a claim with the ABCMR on August 23, 2000.[5] Def.'s Reply at 2. The government asserts that there is no evidence that plaintiff sought any form of relief during those fourteen years. *Id*. The government contends that plaintiff's "chance meeting" with a retired officer wherein plaintiff learned he could pursue a remedy with the ABCMR does not demonstrate that plaintiff was "actively pursing a remedy." *Id*.

[5]/ In military pay cases, a plaintiff is not required to exhaust permissive administrative remedies prior to filing suit in this court. *See Martinez*, 333 F.3d at 1304 ("[T]his court and the Court of Claims have long held that, in Tucker Act suits, a plaintiff is not required to exhaust a permissive administrative remedy before bringing suit. As a corollary of that rule, the court has held that a plaintiff's invocation of a permissive remedy does not prevent the accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending the exhaustion of that administrative remedy."). It is appropriate to note at this juncture that applications to correction boards such as the ABCMR are considered permissive administrative remedies. *Id*. ("[S]ince their creation, the correction boards have been regarded as a permissive administrative remedy and that an application to a correction board is therefore not a mandatory prerequisite to filing a Tucker Act suit challenging the discharge.").

The government further contends that even after plaintiff's initial filing with the ABCMR in August 2000, plaintiff waited six years before filing suit in this court. *Id.* at 4. In short, defendant concludes that the sheer length of plaintiff's delay establishes a lack of due diligence.

LTC Ingham rejects defendant's arguments that his efforts to seek relief lacked diligence. LTC Ingham asserts that he tried to find a solution between 1986 and 2000. Plaintiff claims that each time he talked to Reserve personnel or other persons within the military community, he was always told that the "applicable regulation terminated my promotion when I transferred from active duty to reserve status. That changed in 1996, but that change had nothing to do with me." Pl.'s Aff. ¶¶ 6-8. In 1991, LTC Ingham claims that he discussed the situation with his "advanced course class leader, Major Delzell, and members of the staff of the advanced course." *Id.* ¶ 7. LTC Ingham further asserts that he had never heard of the ABCMR until he talked with a retired military officer in 2000 who recommended that plaintiff file a claim with the Board. *Id.* ¶ 9. Plaintiff asserts that once he knew of a "potential remedy," he vigorously pursued the matter by filing a claim with the ABCMR in August 2000, and, subsequently, filing suit in this court. Pl.'s Mot. at 7.

A key factor to establishing unreasonable delay is whether the plaintiff was diligent in his efforts to file a complaint in a timely manner. *Pepper v. United States*, 794 F.2d 1571, 1575 (Fed. Cir. 1986) ("A delay under our precedents need not be that long but the key to these situations is to remember that laches is an equitable defense that aids the vigilant, . . . and it is designed to promote diligence and prevent enforcement of stale claims."); *Jones v. United States*, 6 Cl. Ct. 531, 532 (1984); In the present case, the court agrees with the government that LTC Ingham was not diligent in his pursuit of relief. Talking to his advanced course leader in 1991, or seeking advice from a retired military officer at plaintiff's church in 2000, cannot be perceived as a diligent pursuit of relief. Pl.'s Aff. ¶¶ 7, 9. LTC Ingham discovered that he was allegedly given incorrect advice after his discharge in April 1986, certainly no later than April 21, 1989, but he did not seek any type of relief until August 2000, at least eleven years later, when he filed a claim with the ABCMR. Def.'s Mot. at 3. From the date of the accrual of his claim until August 2000, plaintiff did not avail himself of any legal advice or even formally inquire into the military's hearing procedures. *Id.*

*Adkins v. United States*, 228 Ct. Cl. 909 (1981) is instructive on the requirement that plaintiff must be diligent in pursuing his claim after its accrual date. In *Adkins*, the plaintiff was a former captain in the United States Air Force who was honorably discharged on March 30, 1975 after having been passed over twice for promotion to the grade of permanent major in 1973 and 1974. *Id.* at 910. He was also passed over five times for promotion to the temporary grade of major in 1969, 1970, 1971, 1972 and 1973. *Id*. Plaintiff did not seek any type of relief until December 8, 1976, when he applied to the Officer of Personnel Records Review Board (OPRRB) seeking voidance of four Officer Efficiency Reports (OERs) from the early 1960s. *Id*. The OPRRB voided only the 1965 OER. *Id*. On October 6, 1977, plaintiff filed an application with the Air Force Board for Correction of Military Records (AFBCMR), appealing his non-selection for permanent major, despite the fact that he was advised of his appeal rights at the time of his non-selection. *Id*. He also sought retroactive promotion, restoration to active duty commissioned status, and voidance of the remaining OERs. *Id*. The AFBCMR denied plaintiff’s application in February 1980, and plaintiff filed suit on August 8, 1980. *Id*. Based on the facts, the *Adkins* court determined that plaintiff was not diligent in his efforts to secure a remedy. *Id*. at 911. He delayed for twenty months after discharge before pursuing any administrative remedy and delayed five years and four months from discharge before filing suit. *Id*. at 912. The *Adkins* court concluded that defendant had established that his delay was unreasonable and inexcusable:

> Here plaintiff says he was diligent but the facts suggest otherwise. Allegedly prejudicial OERs were issued between 1962 and 1965, but plaintiff waited until 1976 to contest them before the OPRRB. His nonselections for permanent major, which are at issue now, took place in 1973 and 1974 but plaintiff did not appeal to the correction board until 1977. He was advised by defendant of his appeal rights when he was not selected. Plaintiff waited over 20 months after his discharge to pursue any administrative remedy and 64 months from his discharge to the time he brought suit.

*Adkins*, 228 Ct. Cl. at 911-12.

Similarly, in *Goeppner v. United States*, 3 Cl. Ct. 345 (1983), *aff'd*, 732 F.2d 168 (Fed. Cir. 1984), the court found that the plaintiff unduly delayed in filing suit. Plaintiff brought suit against the United States, seeking retroactive promotion from the rank of major to lieutenant colonel for the period of December 1971 to June 1972, and retroactive promotion from the rank of chief warrant officer to colonel for the period of December 1974 to 1983. *Id.* at 346. Plaintiff also sought back pay. Plaintiff's claim accrued on December 13, 1971 when he was not selected for the rank of lieutenant colonel. *Id*. Plaintiff discovered that his unit commander had recommended plaintiff for the rank of lieutenant colonel but because of an administrative error, the recommendation was not received prior to the Unit Vacancy Promotion Selection Board's adjournment date of December 13, 1971. *Id*. Plaintiff delayed two years and six months following the accrual of his claims before applying to the Correction Board in June 1974 to backdate his promotion date. *Id.* at 347. The Correction Board refused plaintiff's application in August 1974. *Id*. On July 1, 1981, plaintiff requested that the Correction Board reconsider its August 1974 decision, however, the Correction Board denied plaintiff's application in March 1982. Plaintiff then brought suit on May 27, 1982. The court concluded that plaintiff had delayed too long in bringing suit:

> After the Correction Board's August 14, 1974 refusal to backdate his promotion date, plaintiff waited over seven years and nine months before bringing this action. Following the discovery of supportive material in his files in September 1979, plaintiff waited one year and ten months before again petitioning the Correction Board for reconsideration, and two years and eight months before bringing this action. Plaintiff's claim was fully mature after December 13, 1971, and he presents this Court with no circumstances justifying his delay in bringing suit.

*Goeppner*, 3 Cl. Ct. at 348.

Finally, in *Deering v. United States*, 620 F.2d 242 (1980), the plaintiff was serving on active duty as a lieutenant colonel in the Army when he was discharged on June 24, 1971, after an annual review by the Department of the Army Active

Duty Board. Soon thereafter, plaintiff enlisted in the Army and subsequently filed suit in June 1977. *Id.* In his complaint, plaintiff alleged that the Board based his discharge on alleged irregularities that were found in two Officer Efficiency Reports (OERs) issued in 1966 and 1969. Despite his knowledge of these OERs issued in the 1960s, plaintiff did not seek relief until 1977, when he filed suit. *Id.* at 246. The court held that the government had established that plaintiff's delay was unreasonable. *Id.*

In the instant case, the government has satisfied the first prong of the laches defense. Defendant has demonstrated that LTC Ingham's delay in bringing suit was unreasonable. The cases cited herein such as *Adkins*, *Goeppner*, and *Deering* support the government's contention that LTC Ingham was not diligent in his efforts to seek redress for his claims. LTC Ingham's claims accrued between April 1986 and April 1989; however, he did not file a claim with the ABCMR until August 2000. Exacerbating his already notable tardiness, LTC Ingham then waited until February 2007 to bring his claims in this court. Plaintiff here took at least eleven years before submitting his application to the ABCMR and a minimum of seventeen years before initiating the present court action. Thus, LTC Ingham's delays, in comparison, far exceed the approximately one and a half-year and five and a half-year delays for filing administrative and judicial appeals, respectively, which the *Adkins* court found to be unreasonable and inexcusable. The *Goeppner* court determined that a plaintiff had unduly delayed by waiting for almost three years before applying to the ABCMR and nearly eight years before filing suit. In *Deering*, six years was found to be too great a delay before coming to court. In light of binding caselaw and in view of the time periods which passed during LTC Ingham's on and off again efforts to seek relief, the court finds that the length of time that it took plaintiff to pursue his claims is unreasonable.

The court also finds that plaintiff's delay is "inexcusable." LTC Ingham seeks to justify his delay in filing suit by claiming ignorance of his legal rights. "This was the first time I had heard of the ABCMR. I never learned that I could go directly to Federal Court . . . . I am a Data Management and Automation type. I knew nothing about personnel actions. The intersection of active duty and reserve regulations was completely unknown to me." Pl.'s Aff. ¶¶ 9, 11.

Despite LTC Ingham's professed lack of expertise or familiarity with

military and civilian legal systems, LTC Ingham had an affirmative duty to at least inquire whether he had the necessary facts to pursue legal redress for his claims. "[T]he law is well-settled that where the question of laches is in issue, the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry.'" *Advanced Cardiovascular*, 988 F.2d at 1162 (quoting *Johnston v. Standard Mining Co.*, 148 U.S. 360, 370 (1893)). Soon after his entry into the Reserves in 1986, LTC Ingham knew that he had received erroneous advice. Although armed with that crucial information, LTC Ingham failed to take the necessary steps to secure a remedy. Plaintiff could have contacted the Army and sought advice from senior military personnel with expertise in military personnel law. He could have retained legal counsel as he did for his final request with the Board in December 2005. Def.'s Reply at 3; AR at 9-15. Alternatively, as defendant points out, LTC Ingham could have taken advantage of the free legal services offered to members of the Army and the Reserves. Def.'s Reply at 3. Plaintiff, however, did not pursue any of these steps for years after the accrual of his claim. Even when he decided to take action and filed a claim with the Board in August 2000, he waited another six years to institute an action in this court. The court finds that LTC Ingham has established no extenuating circumstances sufficient to excuse his delay in bringing suit.

In view of the facts of this case, the court agrees with the government that LTC's Ingham's delay is indeed unreasonable and inexcusable. Plaintiff has not convinced the court that he diligently pursued his claim once it accrued by or before April 1989. He waited at least seventeen years and ten months before asserting his rights in the commencement of this litigation. According to binding precedent, LTC Ingham's excuses are insufficient to justify the almost eighteen year delay in filing suit.

### B. Plaintiff's Undue Delay in Filing Suit Prejudiced Defendant

Although defendant has established delay, delay by itself is insufficient to establish laches. *Cornetta*, 851 F.2d at 1378. Defendant must also prove that it has been prejudiced by plaintiff's undue delay. *Id*. There are two types of prejudice that might result from plaintiff's delay: economic prejudice or evidentiary prejudice. *Id*. Defendant is only required to show one type of

prejudice. *Id*.; *see also Jana, Inc. v. United States*, 936 F.2d 1265, 1269-70 (Fed. Cir. 1991) (stating that defendant is required to show either economic prejudice or defense prejudice).

Economic prejudice focuses on the financial hardship that defendant would have to endure should plaintiff succeed in his claim. *A.C. Aukerman*, 960 F.2d at 1033. To prove economic prejudice, a defendant cannot merely assert that he would suffer prejudice because he has to make a monetary payment. *See Cornetta*, 851 F.2d at 1380 (holding that the potential receipt of back pay is insufficient to satisfy the prejudice prong of laches). A defendant has to show that the economic prejudice is a consequential effect of plaintiff's delay in filing suit.

Evidentiary prejudice, on the other hand, requires a defendant to show the difficulties that he would encounter in defending against a claim after a lengthy delay. *Cornetta*, 851 F.2d at 1378. Difficulties may involve the inability to find records or documents pertaining to the matter, destruction of evidence or the unavailability of witnesses. *Id*. The Federal Circuit has ruled that the difficulties of "finding witnesses and documents, [or,] difficulty in reviving fading memories . . ." are a basis for establishing evidentiary prejudice. *Pepper*, 794 F.2d at 1575.

In the instant case, the government makes arguments for both economic and evidentiary prejudice. First, defendant claims that it would suffer substantial economic prejudice because of the plaintiff's delay in filing suit. Def.'s Reply at 6. The government asserts that it would have to pay plaintiff for periods of time that plaintiff was not actually performing the duties of a higher grade. *Id.* "For example, while plaintiff was being paid as a captain, he was performing the duties of a captain. If plaintiff were paid in the pay grade of a major for performing duties of a captain, the Army would suffer the economic prejudice of paying plaintiff more than the value it received from his services." *Id*. In this regard, the government contends that the amount of monetary damages would be exacerbated due to plaintiff's delay in filing suit. *Id.*

The government also contends that it would suffer evidentiary prejudice if it is required to defend against plaintiff's claims. In support of its contention, the government makes reference to a letter dated March 5, 2002, from Captain

Patterson, the provider of the ill-fated advice to plaintiff, which LTC Ingham relied upon before the ABCMR. The letter reveals that Captain Patterson, himself, no longer had specific recollection of the advice that he gave plaintiff. Captain Patterson wrote, "I wish I could cite to the regulation I interpreted when advising you, but too many years have passed since I perused them." *Id.*; AR at 67. Defendant argues that Captain Patterson cannot recall the advice because of plaintiff's delay in bringing suit. Def.'s Mot. at 6; Def.'s Reply at 6. Additionally, defendant avers that it would be difficult for the government to locate additional witnesses and evidence after a period of almost twenty years. Even if witnesses were located, defendant reasonably asserts that the witnesses' memories will have faded after such a protracted period of time.

LTC Ingham fails to rebut defendant's allegations regarding prejudice. Instead, plaintiff simply states that this is not a case that requires the application of laches. Pl.'s Mot. at 8. LTC Ingham reminds the court that he is merely asking that a couple of dates be adjusted to reflect the dates that he would have been promoted. *Id*. Further, plaintiff does not agree that defendant will suffer economic prejudice. Plaintiff's only response to defendant's economic prejudice argument is that "[i]f plaintiff should have been given an earlier promotion date, then plaintiff should have received more money. It is that simple." *Id*.

Given the circumstances present in this case, the court must agree that the government has established economic prejudice. The government has demonstrated that LTC Ingham has requested back pay for periods during which he was not performing services at the rank for which pay has been demanded.[6] Def.'s Reply at 6. More importantly, the government has shown that if it is required to make these payments, it would be paying plaintiff an inflated compensation as a direct result of plaintiff's delay in asserting his rights. *Id.* Even if plaintiff could establish defendant's liability for the requested back pay, defendant would still be unduly prejudiced because of the damages increased by plaintiff's protracted delay in filing suit. *See Pepper*, 794 F.2d at 1574 (affirming Claims Court because "the United States would be damaged monetarily" by plaintiff's delay in filing suit); *Adkins*, 228 Ct. Cl. at 912 ("[I]t is evident that defendant would be prejudiced by

---

[6] / Plaintiff requests: (1) Back pay and allowances as a captain from April 22, 1986 to April 21, 1993, and (2) Back pay and allowances as a major from April 22, 1993 to April 18, 2003. Compl. ¶ 18.

plaintiff's recovery, for it would have to pay him for the many years he rendered no service to defendant and delayed advancing his claim, thus enhancing his prospective damages."); *Deering*, 620 F.2d at 246 (noting that there would be "a prejudicial effect of having to pay for an extended period a salary for services the Government did not require"). Accordingly, the court finds that the government would be financially prejudiced by plaintiff's recovery.

Finally, the government has also established evidentiary prejudice. The court agrees with the government that it would be difficult, after almost twenty years, to locate witnesses on its behalf to defend its case. The court is convinced that the location of these witnesses would be a further waste of time and resources inasmuch as it is likely that these witnesses would not be able to recall the crucial events that surrounded LTC Ingham's claims. In fact, the government has produced evidence showing that even the primary witness, Captain Patterson, is unable to recall the specific advice that he gave LTC Ingham in April 1986. *See Pepper*, 794 F.2d at 1575 (finding evidentiary prejudice where officials did not recall the relevant events necessary to defend their case). Accordingly, the court finds that the government would suffer both economic and evidentiary prejudice if it is required to defend against plaintiff's claims.

## CONCLUSION

For the foregoing reasons, plaintiff's claims must be dismissed because they are barred by the doctrine of laches. Accordingly, it is **ORDERED** that

(1) Plaintiff's Motion for Leave to Consider its Affidavit, filed July 27, 2007, is **GRANTED** and shall be considered filed as of the date of this order;

(2) Defendant's Motion to Dismiss and, in the Alternative, for Judgment on the Administrative Record, filed July 6, 2007, is **DENIED in part**, as to the Motion to Dismiss; and **GRANTED in part**, as to the Motion for Judgment on the Administrative Record;

(3) Plaintiff's Cross Motion for Judgment on the Administrative Record and Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss and, in the Alternative, for Judgment on the Administrative Record and in Opposition to the

Above-Captioned Matter Being Barred by Laches, filed on July 27, 2007, is **DENIED**;

(4) The Clerk's Office is directed to **ENTER** final judgment in favor of defendant **DISMISSING** the complaint, with prejudice; and

(5) Each party shall bear its own costs.

/s/ Lynn J. Bush
LYNN J. BUSH
Judge